THE STATE ex rel. HEITKAMP, Appellant, v. RYLAND et al.

Division Two, June 11, 1901.

1. **Notary Public:** LIABILITY ON BOND: ACKNOWLEDGMENT: FALSE CERTIFICATE. Under Revised Statutes 1889, sections 2407, 2408, a notary public is authorized to take acknowledgments of deeds. Section 7111 provides that a notary shall give bond, to be sued on by any person injured. *Held,* that where a notary, by virtue of his office, took an acknowledgment of a deed, such act, even if illegal, fixed the liability of himself and his surety for any resultant injury, as in doing so he professed to act under color of his office.

2. ———: ———: ———: ———: CASE STATED. A notary public took an acknowledgment of a mortgage, certifying, as required by law, that the maker thereof was personally known to him to be the same person whose name was subscribed thereto. The mortgage was in fact a forgery, executed by one having no interest in the property. The notary testified that he had previously seen the maker of the mortgage in real estate offices, and once asked as to his name, and was told that it was D. S.; that on the day he certified to the acknowledgment he was introduced to the same party as D. S., which was the name attached to the mortgage; that he did not know where the man lived, or that he ever lived in the State of Illinois, as stated in the mortgage, or that he was the owner of land described therein. Revised Statutes 1889, section 2407, prohibits the taking

of an acknowledgment unless the person whose name is subscribed to the instrument is known to the officer taking the same as the person so named in the instrument. *Held*, that the notary was liable for any injuries resulting from the making of the mortgage.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

REVERSED AND REMANDED *(with directions).*

*C. A. Schnake* for appellant.

A notary public who falsely certifies that he is personally acquainted with the grantor in a deed, whom he does not know, and who is personated by another, is liable to all persons damaged by such false certificate. It will not avail anything for the notary to say he was not aware of its falsity, or that he believed it to be true. It is his duty to know it to be true. State to use v. Meyer, 2 Mo. App. 413; State to use v. Plass, 58 Mo. App. 148; R. S. 1889, secs. 2407 and 2412; 2 Sherman & Redfield on Negligence (Ed. 1888), sec. 602. The law is intended to protect a person who deals in real property against the consequences of a false certificate. R. S. 1889, secs. 2407 and 2412; Bartels v. The People, 152 Ill. 557; State to use v. Meyer, supra.

*R. J. Delano* and *Jno. W. Evans* for respondents.

SHERWOOD, P. J.—This cause has been certified to this court by the St. Louis Court of Appeals, on the ground that the opinion of that court was thought by one of the judges to be in conflict with State v. Meyer, 2 Mo. App. 413.

The action is one brought by relator on the official bond of defendant as notary public. The gravamen of the action is

the giving by defendant of a false certificate of acknowledgment to a mortgage deed purporting to be acknowledged by one Richard H. Sykes of Adams county, Illinois, when in truth and in fact, it was acknowledged by one who assumed to bear his name.

Section 7111 of the article entitled "Notaries Public," 2 Un. Rev. Stats. 1889, provides that every notary shall give bond in a certain sum, and that such bond "may be sued on by any person injured," but does not mention the condition or conditions such bond shall contain. The bond of defendant contained this condition: "Now, if the said Alston L. Ryland shall faithfully perform the duties of said office, according to law, then this obligation to be void," etc.

The certificate of acknowledgment to the mortgage-deed in this cause is the following:

"State of Missouri,  }
  City of St. Louis.  } ss.

"I, Alston L. Ryland, a notary public in and for said city in the State aforesaid, do hereby certify that Richard H. Sykes (a single man), personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act, for the uses and purposes therein set forth, including the release and waiver of the right of homestead.

"Given under my hand and notarial seal, this seventh day of February, A. D. 1895. My term expires thirty-first October, 1897.

"ALSTON L. RYLAND,
"Notary Public, St. Louis, Mo."

The mortgage was recorded in Adams county, Illinois, on the day next after its execution, as appears by the following indorsement on said deed:

"State of Illinois,    } ss. No. 8625.
Adams County.    }

"This instrument was filed for record in the recorder's office of Adams county, aforesaid, on the eighth day of February, A. D. 1895, at 2:40 o'clock, p. m., and recorded in book 59 of R. E. mortgages on page 277.

               "BEN HECKLE, Recorder.
               "By EDW. MATHES, Deputy."

The history of this litigation is in substance the following:

The plaintiff's evidence shows that on the seventh day of February, 1895, relator loaned the sum of six hundred dollars upon a note and mortgage purported to be executed and acknowledged by one Richard H. Sykes, of Adams county, Illinois. The note and mortgage turned out afterwards to have not been made by Richard H. Sykes, of Adams county, Illinois, the real owner of the land described in the mortgage, but by some other person. The relator lost his money in consequence thereof. Mr. Holschen, who was agent for relator in the transaction, testified that a person representing himself to be Richard H. Sykes, called upon him for a loan upon a farm in Adams county, Illinois, and after arranging the preliminaries with this man in relation to the amount, interest and title, the man called again at a subsequent time and was told he could have the money. Holschen then asked him if he knew anybody in the city who could identify him, to which he replied that he knew Mr. Ryland, a notary public, on Chestnut street. Holschen then said, "All right, if you bring Mr. Ry-

land in, it is all right." Shortly after that he came back with Ryland who thereupon introduced this man to Holschen as Mr. Sykes. Holschen, who had drawn up the mortgage, handed the same to Ryland, who thereupon wrote out the acknowledgment, and having done so, he handed it back to Holschen, who, relying entirely upon the contents of the certificate of acknowledgment, parted with relator's money. On cross-examination he testified that he told this supposed-to-be Sykes that if he could get somebody to identify him and a certificate of title, he could have the money. Plaintiff introduced one Richard H. Sykes, who testified that he lived in Adams county, Illinois, and was the owner of the land described in the mortgage; proved this by showing his title deeds to the land mentioned in the mortgage, which title deeds were dated in 1886, and were duly recorded, and that he owned such land on the seventh day of February, 1895, and still lived on it and owned it, it being his farm; and that on that date he was a married man. He testified that he did not execute either the notes or the mortgage. Defendant Ryland testified that the Richard H. Sykes present in court, was not the person whose acknowledgment he took. He testified that he did not know that the person whose acknowledgment he took was of Adams county, Illinois; nor could he say where that person was now. Being asked how long he had known that person, the said defendant said: "Some months before February 7, at various times I have seen the man walking on Chestnut, sometimes on Tenth street, and one day I was in one of these real estate offices. I make various calls, frequently call at the real estate offices, and that man came in and asked a question and went out, and a party who I think was Dr. James F. Chapman, said, 'Who is that?' and the answer was, 'Why, that is Dick Sykes.' Then I was introduced to him on this occasion, on the seventh of February when I certified to the acknowledgment. He was introduced

to me by one George F. McLean." He also testified that he did not know at the time, nor does he know now, whether that man was single or married; or where he lived; or that he was living in Adams county, Illinois; or that he was the owner of the land described in the mortgage.

The George F. McLean who introduced this man Richard H. Sykes to the defendant, testified that he had known the man since September, 1893; that he could not tell where he was living; that he would see him at the office of witness occasionally; see him on the street, say, once a week, and then not for a month; that this man who called himself Richard H. Sykes, once listed a piece of property in that name and wanted to exchange it for a stock of jewelry. This witness does not state that he was ever introduced to Sykes by that name, but that in 1893 a man came into witness's office and listed property to him in the name of Richard H. Sykes. Where he lived witness did not know, nor whether he was a single man nor whether he owned the property mortgaged. He was present when defendant took the acknowledgment and the deed in Holschen's office; he, witness, was paid a fee out of the money Holschen paid over and this fee was paid him for his services in securing the loan in question, and he has not seen the man since, except a day or two after the transaction took place, when he disappeared. And McLean also testified that the Richard H. Sykes then present in court was not the Richard H. Sykes who signed the notes and acknowledged the mortgage-deed.

Our statutory sections respecting the taking of an acknowledgment of a deed, are as follow:

"Sec. 2407. No acknowledgment of any instrument in writing conveying real estate, or whereby any real estate may be affected, shall be taken, unless the persons offering to make such acknowledgment shall be personally known to at least one judge of the court, or to the officer taking the same, to be the

person whose name is subscribed to such instrument as a party thereto, or shall be proved to be such by at least two credible witnesses.

"Sec. 2408. The certificate of acknowledgment shall state the act of acknowledgment, and that the person making the same was personally known to at least one judge of the court, or to the officer granting the certificate, to be the person whose name is subscribed to the instrument as a party thereto, or was proved to be such by at least two witnesses, whose names and places of residence shall be inserted in the certificate; and the following forms of acknowledgment may be used in the case of conveyances or other written instruments affecting real estate; and any acknowledgment so taken and certified shall be sufficient to satisfy all requirements of law relating to the execution or recording of such instruments.

"On this . . . . day of . . . . , 18—, before me personally appeared A. B. (or A. B. and C. D.) to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he (or they) executed the same as his (or their) free act and deed." [Un. Rev. Stats. Mo. 1889, sections 2407 and 2408.]

Sections 2410, 2411, 2412, of the same chapter, provide that:

"Sec. 2410. No proof by a subscribing witness shall be taken, unless such witness shall be personally known to at least one judge of the court, or to the officer taking the proof, to be the person whose name is subscribed to the instrument as a witness thereto, or shall be proved to be such by at least two credible witnesses.

"Sec. 2411. No certificate of such proof shall be granted, unless such subscribing witness shall prove that the person whose name is subscribed thereto as a party is the person who executed the same; that such person executed the instrument,

and that such witness subscribed his name as a witness thereof.

"Sec. 2412. The certificate of such proof shall set forth the following matters: First, the fact that such subscribing witness was personally known to at least one judge of the court, or to the officer granting the certificate, to be the person whose name is subscribed to such instrument as a witness thereto, or was proved to be such by at least two witnesses, whose names and places of residence shall be inserted in the certificate; second, the proof given by such witnesses of the execution of such instrument, and of the facts that the person whose name is subscribed to such instrument as party thereto is the person who executed the same, and that such witness subscribed his name to such instrument as a witness thereof."

It is wholly immaterial in this case whether defendant Ryland's certificate was valid under the laws of Illinois or under the laws of this State or not. He and his sureties are liable on his official bond if he made a false certificate respecting the fact of the signer of the mortgage *being personally known to him*. And this is so for the reason that at any rate the act was done *colore officii*. Where an act is done in apparent conformity to a legally conferred authority, but is in reality in excess or in perversion of such authority, and an injury results from such unwarranted exercise of apparently-conferred authority, there, the officer and his sureties are liable on his official bond for such dereliction from official duty. Here, the defendant notary by virtue of his office, was authorized to take acknowledgment of deeds in this State. Whether such acknowledgments would pass current in Illinois does not appear, nor is it necessary to inquire, because the defendant in taking the acknowledgment, *professed to act under color of his office,* and this act, *even if illegal,* fixes the liability of himself and sureties for any resultant injury.

The law on this point is well settled in this State. [Rol-

lins et al. v. State, 13 Mo. 437; Ingram's Admrs. v. McCombs, 17 Mo. 558; State v. Moore, 19 Mo. 369; State to use v. Fitzpatrick, 64 Mo. 185; State ex rel. v. Davis, 88 Mo. 585; State ex rel. v. Edmundson, 71 Mo. App. 172; Turner v. Sisson, 137 Mass. 191, and cases cited.]

MORTON, C. J., in the case last cited, said: "By an official act is not meant a lawful act of the officer in the service of process; if so, the sureties would never be responsible. It means any act done by the officer in his official capacity, under color and by virtue of his office."

There is a conflict of authority on the point in hand, but this court in its rulings is in line with the generally prevalent course of decision.

Touching this topic, an author of recognized merit, after stating the views in opposition to the one heretofore announced by this court, says: "On the other hand, it is said that the undertaking of the sureties is that their principal will well and faithfully execute the duties of his office, and that he can not be deemed to have done so when he seizes the property of a stranger or levies upon property exempt from execution. There is, therefore, such a breach of the condition of the bond as renders the sureties liable."

And the author further says: "But the rule of liability is not only supported by the soundest reasons of policy, but is maintained by the great preponderance of authority, being adopted in California, Iowa, Illinois, Kentucky, Maine, Massachusetts, Michigan, Missouri, Nebraska, New York, Ohio, Pennsylvania, Texas, Virginia, Washington, the District of Columbia and the Supreme Court of the United States." [Mechem, Pub. Off., sec. 284.]

The lower court, as well as the Court of Appeals, thought there was a failure of evidence to establish that the certificate of the defendant notary was false, and it is because of this

position that the evidence has been set out substantially at large. And just here it is in order to correct a misstatement of a portion of that evidence by the Court of Appeals, where it is said: "Ryland testified that Sykes had been introduced to him some months before he took his acknowledgment to the mortgage, and that he had frequently seen him walking on Chestnut and Tenth streets, and that he had been introduced to him in one of the real estate offices."

On the contrary, Ryland testified: "Some months before February 7, at various times I have seen the man walking on Chestnut, sometimes on Tenth street, and one day I was in one of these real estate offices. I make various calls, frequently call at the real estate offices, and that man came in and asked a question and went out, and a party who I think was Dr. James F. Chapman, said, 'Who is that?' and the answer was, 'Why, that is Dick Sykes.' Then I was introduced to him on this occasion, on the seventh of February when I certified to the acknowledgment. He was introduced to me by one George F. McLean."

From the latter statement it is at once apparent that Ryland had never *"been introduced to Sykes several months"* before he took his acknowledgment, and that Ryland had never been introduced to Sykes in one of the real estate offices. Ryland says,*"Then* I was introduced to him on this occasion, on the seventh of February when I certified to the acknowledgment. He was introduced to me by one George F. McLean."

In this connection, it is not improper to note that although the *pseudo* Sykes had known McLean since September, 1893, what time he came to McLean's office and listed some property in the name of Richard H. Sykes; and although he had agreed to give McLean a fee for securing the loan for him, yet Sykes never mentioned to Holschen the name of McLean as one who

Vol 163 mo—19

could identify him, but did mention Ryland's name, although Ryland states that he was introduced to Sykes by McLean, on the seventh of February when he certified to the acknowledgment. Nor must it be forgotten that Sykes professed to know Ryland; said he would identify him; went after Ryland; brought him back, when Ryland introduced Sykes to Holschen as "Mr. Sykes," and it is quite singular also, if Sykes knew Ryland and that he could identify him, that Ryland had to be *introduced* to Sykes at the time the certificate of acknowledgment was made. What portion of the *"loan"* McLean obtained for his services, does not appear. Looking carefully at the evidence in this record, no other reasonable conclusion can be reached but that defendant Ryland's conduct in certifying that Richard H. Sykes, who had just been introduced to him, was personally known to him to be the same person whose name was subscribed to the foregoing instrument, exhibits a remarkable lack of that diligence which the law, in such circumstances, demands at the hands of a notary public.

Giving such a certificate, he had to *personally know at his peril,* that the person introduced to him as Richard H. Sykes, *was of Adams county, Illinois,* for that was his description as grantor in the mortgage-deed. If at all doubtful on this score, he had ample means of protection afforded him in sections 2407-2412, supra, by summoning "at least two credible witnesses" to testify to the fact that the person whose name is subscribed to the judgment is personally known to them as a party thereto.

And a notary public when he certifies to an acknowledgment, *must possess no less knowledge than the witnesses who bear testimony to the same fact of identity.* Nothing short of this will answer the full measure of diligence required by the law. These views find full support in State to use v. Meyer, 2 Mo. App. 413, where the subject is discussed with signal

clearness and ability, in an opinion by GANTT, P. J.; and to the like effect is the opinion by BLAND, P. J., in State ex rel. v. Balmer, 77 Mo. App. 463.

The latter case presented features very much like those in the case at bar. In the course of his remarks in Balmer's case, the presiding justice said: "But suppose the person who executed the deed was named Fred Steiner; he was not the Fred Steiner who owned the property described in the deed, who was a married man, not a widower; it was this Fred Steiner whom Balmer certified was personally known to him to be the person he represented himself to be, not merely that his name was Fred Steiner; and it matters not what his real name was nor how many Fred Steiners there may be." [See, also, Bartels v. People, 152 Ill. 557.]

Counsel for Ryland cite as directly in point in favor of their client the case of Browne v. Dolan, 68 Iowa 645. That statement is a gross misapprehension of that case; for in that State section 1964 provides that: "Any officer who knowingly misstates a material fact in either of the certificates above contemplated shall be liable for all damages caused thereby," and in that case, that of Scotten v. Fegan, 62 Iowa 236, is cited and followed with approval, where it was ruled that under the statute quoted, the notary in order to be liable for making a false certificate of acknowledgment, must make such false certificate *"knowingly."*

Under the authorities heretofore cited, whenever relator established, as he did, that Richard H. Sykes of Adams county, Illinois, the party described in the deed of mortgage was then present in court; that he owned and lived on the land mentioned in such deed, and that he had never executed or authorized the execution of the mortgage in question, relator thereby made out a prima facie case and cast the *onus probandi* on defendant to combat what had been proved, if he could, but

he did not do this; nor could he do this by such supposed evidence as he offered in that behalf.

Nor did relator have "to show that the man, Richard H. Sykes, who signed that deed, *was not* Richard H. Sykes." This would have required relator to prove a negative. Such proof would, it seems, have been rather difficult to make with the *pseudo* Sykes absconded; and even if proved would have been wholly immaterial to the issue joined in this case.

For these reasons the trial court should have given a declaration of law that on the evidence adduced relator was entitled to recover.

Therefore, judgment reversed and cause remanded to the St. Louis Court of Appeals with directions to enter judgment in favor of relator in the amount of the penalty of the bond of defendant, and that execution issue for the amount loaned by relator together with six per cent interest from the date of such loan, and for costs.

All concur.