STATE OF MISSOURI ex rel. COVENANT MUTUAL LIFE INSURANCE COMPANY, Respondent, v. CHARLES G. BALMER et al., Defendants; JOHN G. SCHUETZ, et al., Appellants.

St. Louis Court of Appeals, December 13, 1898.

1. **Notary Public:** ACKNOWLEDGMENT. When an officer, taking an acknowledgment and making a certificate, assumes any fact, he does it at his own risk. The law warns him, when he has not personal knowledge of his own, to require proof by two witnesses who possess such personal knowledge of the identity of the cognizor with the grantor.

2. ——— : ——— : FALSE: CONSEQUENCES.  In the case at bar Pilling had
the right to rely on Balmer's certificate.  It was an official act, such
an one as business men every day and everywhere must rely on in the
transaction of their business, and they are not required to doubt the
truth of such a certificate and go out to verify it.  The law makes a
notary's certificate evidence of the fact contained in it, and, if it
turns out to be false, the notary, not his confiding victim, should suffer
the consequences.

*Appeal from the St. Louis City Circuit Court.*—HON.
SELDEN P. SPENCER, Judge.

AFFIRMED.

CAMPBELL & RYAN for respondent.

Point number 1, made in brief of appellants, is not
well taken.   *   *   *   Appellants' second point is not
well taken; there was evidence, reasonably satisfactory,
from which the jury could readily find that the swin-
dler's name was not Fred Steiner.  The papers signed
by this man under the name of Morse, and Fred
Steiner's description of him, tallying and agreeing with
the description of the same man by Pilling and Balmer,
coupled with the surrounding facts of the case, and the
sudden flight and disappearance of the man, were so
weighty as to exclude any other conclusion from the
mind of the jury than that the man was not named
Fred Steiner.  The issue was put to them by the
instructions and their finding is conclusive.  The third
point of appellants is not good; the evidence was direct
and ample that the loan was made upon the security of
the property; that the loan would not have been made
if there had been no acknowledgment to the deed, that
it was made upon the faith of the acknowledgment.
The record shows that the responsibility of the owner
was not considered by the company in making this
loan only the value of the property.   The instructions

offered by the defendants were properly refused, and all material legal points of their instructions were better presented to the jury in the instructions given by the court of its own motion. The law sustains the view taken of this case by the court in the instructions given. State to use v. Meyer, 2 Mo. App. 413; People v. Butler, 42 N. W. Rep. 271, 275, 276. The points are made, in argument, that Balmer was agent for the Covenant Mutual Insurance Company. All we can say to this is that there is no support at all for this statement to be found in the record. It is also argued that the insurance company did not rely solely upon the acknowledgments, this is also wholly without support, but as a legal proposition, it would not be obliged to rely solely upon the certificate to recover from Balmer and his bondsmen for a false certificate, the false certificate and nothing else was the direct cause of the loss of the money to the insurance company. The question of negligence of the insurance company was one for the jury, and their verdict was right.

COLLINS & JAMISON for appellants.

The court erred in admitting evidence as to the transaction between the owner of the property and the man giving the name of C. R. Morse. There is no evidence tending to prove that the person who executed the deed of trust was not named Fred Steiner. There was no evidence tending to prove that the respondent relied solely upon the certificate of acknowledgment. The court erred in refusing certain instructions asked by appellants. State to use v. Brighton, 58 Mo. App. 155; State to use v. Alexander, 58 Mo. App. 148; State to use v. Meyer, 2 Mo. App. 413.

BLAND, P. J.—Suit was against Charles G. Balmer, a notary public, and his sureties, on his official bond. After setting forth his appointment as notary, the giving of the bond and qualifying as notary, the petition alleges as a breach of the conditions of the bond the following: "That about December 14th, 1896, the Covenant Mutual Life Insurance Company having the sum of $2,200 to loan upon real estate security, undertook to loan same to one Fred Steiner to be secured by first deed of trust upon certain good and sufficient real estate situated upon St. Vincent avenue in said city, then owned by said Steiner, more particularly described in a certain false deed of trust, recorded in the recorder's office of the city of St. Louis, in book 1379, page 54; that said insurance company had the title to said real estate examined and found the same to be in said Fred Steiner; that, thereafter, said deed of trust was prepared, and a person pretending to be and personating said Fred Steiner, executed and acknowledged the deed of trust to secure said sum of $2,200 to be loaned by said insurance company to Fred Steiner before said defendant, Balmer, as a notary public who on December 4th, 1896, certified under his official signature and seal as notary, that on December 14th, 1896, Fred Steiner, known to him, notary, to be the person described in and who executed the said deed of trust, and acknowledged that he executed the same as his free act and deed; that said insurance company relying upon said notarial acknowledgment so taken by said defendant, Balmer, accepted said deed of trust as the genuine deed of trust of Fred Steiner, and paid out the sum of $2,200 upon the faith of and accepting said deed of trust as security therefor; that Fred Steiner, the owner of said property, was a well known person, doing business at 2242 Chouteau avenue, and there residing with his family: that

he never executed said deed of trust nor did he author-
ize its execution, and never acknowledged the same,
and that by reason of the negligence and carelessness of
said Balmer in taking the acknowledgment of said deed
of trust and certifying to a false state of facts, and
failing to ascertain the true personality of the cognizor,
said insurance company lost the sum of $2,200, etc."
The several defendants by their respective attorneys
filed general denials of the petition. A trial was had
before the court and a jury, resulting in a verdict and
judgment for the plaintiff. Defendants being unsuc-
cessful on a motion for a new trial duly appealed.

From the evidence it appears that defendant,
Charles G. Balmer, was duly appointed and qualified
as notary public, and furnished the statutory bond
sued on, with Charles F. Kuhn and John G. Schuetz
as sureties; that early in December, 1896, Balmer
called upon Charles E. Philling, secretary of the Cov-
enant Mutual Life Insurance Company, a corporation,
and stated that he had a party who wanted to borrow
$2,200 on a house and lot on St. Vincent avenue, in
the city of St. Louis, belonging to Fred Steiner; Pill-
ing handed to Balmer one of the company's blank
applications for a loan with directions to have it filled
out and signed, and to have the real estate appraised
by some one familiar with the value of the property.
In a couple of days Balmer returned with the blank
application filled out and delivered to Pilling. It was
signed "Fred Steiner, per B." (Balmer). The plain-
tiff's real estate committee of experts then went out
and examined the property and approved the security.
Balmer then produced to Pilling a certificate of title
made out by one Wenslick, a title examiner. Pilling
told him that the certificate would not be satisfactory;
that the company would require the certificate of
Gehner, the St. Louis Trust Company or of the Union

Trust Company. Balmer then procured from Pilling blank papers to be drawn for the loan, and on December 14, 1896, returned to Pilling's office with two men, one of whom he introduced to Pilling as Fred Steiner, the owner of the property on St. Vincent avenue; he had with him notes and a deed of trust on the property to secure the loan duly made out and purporting to be signed and acknowledged by Fred Steiner (a widower), the acknowledgment being certified by Balmer as notary public. Gehner's certificate of title was produced with the notes and deed of trust. On these papers the loan was made. At the request of Balmer and by the consent of the would be Steiner, the checks were drawn to cover the amount of the loan, one for $107.75, payable to Balmer; the other for $2,092.25, payable to Fred Steiner. Immediately on receipt of the checks Balmer and Steiner proceeded to the bank on which they were drawn (The Merchants Laclede), where Balmer was known, and the checks were presented for payment, and were paid (Balmer identifying Fred Steiner). A few days after this transaction, the respondent received information that the real Fred Steiner was a married man, that he did not apply for the loan, and had not signed the trust deed, nor received any part of the loan; immediately search was instituted to discover the so-called Fred Steiner, but up to the date of the trial he remained undiscovered. Fred Steiner, who owned the property described in the deed of trust, resided on Chouteau avenue in St. Louis; was a married man; did not sign the deed of trust nor authorize any one to do so for him, nor did he appear before Balmer and acknowledge it as his act and deed; in fact he was entirely ignorant of the whole transaction, until some time after its consummation. It appears from the evidence that one Charles Wilson, early in December, 1896, rented desk room and paid

one month's rent in advance in the office 'of Scholl-
meyer Realty Company on Chestnut street; he put in a
desk and a small sign over it, but was not known to do
any business.   Balmer frequently met this man on the
street after he became a tenant in the realty company
office, but had no previous acquaintance with him.
Prior to December 14, 1896, Wilson called several
times at Balmer's place of residence to interview him
about borrowing money, and on the sixth of December
he came to Balmer and asked about this loan of $2,200.
A man calling himself C. R. Morse, about September
7, 1896, called at Fred Steiner's residence Number
2243 Chouteau avenue, and wanted to purchase
Steiner's St. Vincent avenue property (same described
in deed of trust); he and Steiner struck a bargain for
the property, and Steiner signed and gave him a con-
tract for the purchase of the property, Morse paying
Steiner $15 earnest money; at this time Steiner gave
Morse the certificate of title made by Wenslick; sub-
sequently he sent a note to Steiner putting off the sale
on account of the alleged sickness of his wife; on
December 14, 1896, he sent Steiner a letter by mail
inclosing the Wenslick certificate of title and stating
that the trade was off, and asking Steiner to return the
$15 earnest money.   From the evidence it appears
reasonably certain that this man Morse is the man who
personated Steiner in the execution of the trust deed
and got $2,092.25 of respondent's money.   He was
introduced to Balmer by Wilson as Fred Steiner, the
man who wanted to borrow the money; Wilson was
not known in St. Louis prior to the time he rented
desk room in the real estate office of Schollmeyer
Realty Company.   In December, 1896, Balmer had
only a casual acquaintance with him, and none prior
to his appearance in the Schollmeyer Realty Company
office, and, when he certified the acknowledgment to

the deed of trust, took Wilson's introduction of Morse to him as Fred Steiner, as satisfactory evidence that it was the real Fred Steiner. Pilling testified that it was on the faith of the acknowledgment to the deed of trust that he loaned the plaintiff's money, and that Balmer had introduced the man to whom he gave the check for $2,092.95 to him as Fred Steiner, and that he relied upon that also. Counsel for appellant contends that the court erred in admitting evidence of the transaction between Steiner and Morse about the sale of the St. Vincent avenue property. We think not; it formed a link in the chain of evidence by which the fraudulent transaction was brought to light, and accounted for the ability of Balmer to present the Wenslick certificate to Pilling.

The second assignment of error is that there is no evidence tending to prove that the person who executed the deed of trust was not named Fred Steiner. In this we think counsel misconceives the probative force of the facts and circumstances fairly deducible from the evidence. To our minds it is quite clear from the evidence that Wilson and Morse conspired together to perpetrate the fraud on the respondent, which they were enabled to consummate through the negligence and over confidence of Balmer, the notary. The description given of Morse by Pilling and the real Fred Steiner, the means to which he resorted to get possession of the Wenslick certificate of title and his subsequent conduct in returning it to Steiner, leave but little room to doubt that it was he who represented himself to be Fred Steiner, and as Fred Steiner executed the deed of trust, received the respondent's check and got the cash on it, through the aid of Balmer. But suppose the person who executed the deed was named Fred Steiner; he was not the Fred Steiner who owned the property described in the deed, who was a married

man, not a widower; it was this Fred Steiner whom Balmer certified was personally known to him to be the person he represented himself to be, not merely that his name was Fred Steiner; and it matters not what his real name was nor how many Fred Steiners there may be, it was Balmer's duty as notary to know to a reasonable certainty that the person who appeared before him to acknowledge the deed was the person he represented himself to be.

The third assignment of error that there is no evidence that respondent relied solely upon the certificate of acknowledgment, is contradicted by the evidence of Pilling; it is also contradicted by the transaction itself. The real estate was examined by respondent's committee of expert examiners, and approved of as good security for the loan; a certificate of title was required, and the execution of a deed of trust in approved form by the owner of the realty was also required before respondent would make the loan. These things were not done and required to be done as a matter of form, but to secure the loan, and relying on what had been done, as having been truly and honestly performed, the respondent accepted the security and parted with its money.

The fourth assignment of error is that the court erred in refusing certain instructions asked by appellants. There were several instructions asked by appellants that were refused; the appellants neither in the several motions for new trial, nor in the brief, point out which of these instructions should have been given. We have examined the instructions given and find they presented the appellants' side of the case to the jury in the most favorable light; in view of this fact we will not examine the refused instructions, in the absence of a designation of any particular instruction, the refusal of which is complained of as error.

The duty of a notary public, when certifying to the acknowledgment of a deed conveying real estate, under our statute is well stated by Judge GANTT in State to the use v. Meyer, 2 Mo. App. 413, in the following language: "Every one knows that two intimate freinds, who have known each other from childhood to mature age, living in the same neighborhood all that time, may, in the fullest and most unreserved sense, be said to have such personal knowledge of each other. But, if a stranger be introduced by a respectable person into any company, it is generally safe to assume that he is what he professes to be, although the person making the assumption has nothing for it but his own reliance in the habits of accuracy of the introducer, who, in his turn, may be relying on similar habits in some one else, on whose information he has made the last introduction. It is obvious, when an officer taking an acknowledgment and making a certificate assumes any such fact, he does it at his own risk. The law warns him, when he has not personal knowledge of his own, to resort to certain observances which the law supposes to be sufficient in practice to prevent imposition. The very lowest of these observances is proof by two witnesses who possess such personal knowledge of the identity of the cognizor with the grantor; for the statute says, cautiously, at least two "credible witnesses." Hence we see that, in a case of any doubt it is not only permissible, but imperative, that the number of witnesses should be increased, that, not only their number, but their credit, must be looked to by the officer; that as their testimony is to be taken, they must be sworn; and that, to secure them for future reference, their names and places of residence must be stated in the certificate." Cited and approved in State to use v. Plass, 58 Mo. App. 148.

State ex rel. v. Balmer.

Measured by the requirements of the law as announced in the Meyer case, Balmer fell far short of a performance of his duty, when he made the certificate of acknowledgment to the deed of trust; his certificate is false, perhaps not intentionally so, but so by reason of his negligence. The person who appeared before him was not personally known to him to be Fred Steiner, and was not in fact Fred Steiner; by reasonably diligent inquiry he could have ascertained that Morse was not Fred Steiner, and it was his duty to have made the inquiry, or to have taken proof by affidavits of witnesses to satisfy himself that the person who appeared before him to acknowledge the deed of trust was the person he represented himself to be, the real Fred Steiner. Through his negligence and failure to perform his duty as a notary public, Morse and Wilson succeeded in perpetrating a fraud upon the respondent. We find no evidence in the record tending to prove that the agents of respondents sat quietly by and let the respondent be swindled, as contended for by the appellants. All the precautionary steps usually taken in making such a loan were taken. Pilling had the right to rely on Balmer's certificate. It was an official act, such an one as business men every day and everywhere must rely upon in the transactions of their business, and they are not required to doubt the truth of such certificate and go out to verify it, before acting on it; on the contrary the law makes a notary's certificate evidence of the fact contained in it, and if it turns out to be false, the notary—not his confiding victim—should suffer the consequences. No reversible error appears in the record, and the judgment is affirmed. All concur.