THE STATE OF MISSOURI, At the relation of
JOSEPH MATTER, Appellant, v. JOHN OG-
DEN AND AMERICAN SURETY COMPANY,
of New York, Respondents.

**Kansas City Court of Appeals, January 11, 1915.**

1. **PRINCIPAL AND SURETY: Notaries Public: Bond: Fraudu-
lent Certificate of Acknowledgment.** A notary is required by
law to perform his official acts with integrity, to give bond
for the faithful performance of his official duties, and this bond
may be sued on by anyone who, relying upon the official act
of the notary, has been injured thereby.

2. ————: ————: ————. If a notary makes a false certificate
and an injury results therefrom to another, the notary and his
sureties are liable. They are liable whether the false cer-
tificate is valid or invalid, if made in apparent conformity to
legally constituted authority, but in excess or perversion
thereof, and an injury results therefrom, because in such case
the act is done *colore officii*. A notary is entrusted with high
and important functions; his certificate is made, by law, au-
thentic evidence of the facts stated therein and which are
within the legal scope thereof; his responsibility is as high
as his trust, and, if he officially certifies as true what he
knows to be false, he violates his duty, commits a crime,
binds himself and binds his sureties. The sureties, however,
are liable only for the official acts of the notary and not for
acts done in his capacity as an individual.

3. ————: ————: ————: **Reliance upon Certificate: Contributory
Negligence.** To entitle one to recover for the fraudulent official
act of the notary, he must show that he relied upon that act.
One has a right to rely on the certificate of acknowledgment
as being true and that the persons therein mentioned appeared
before the notary and made the acknowledgment. One is not
required to doubt the truth of the certificate and go out and
verify its statements. He is, therefore, not guilty of con-
tributory negligence in relying thereon.

4. ————: ————: ————: ————: **Must be Cause of Loss.** A
notary presented to relator a note and deed of trust purporting
to be properly executed. The notary forged the instruments
and fraudulently certified to the false acknowledgment. Re-
lator examined the deed to see if it was acknowledged and if
it had not been acknowledged, he would not have parted with

his money. The fraudulent certificate of the notary was necessary to the accomplishment of the loss, and thus caused the loss even though other things aided therein. Relator may, therefore, recover such loss from the notary and his surety even though relator may have believed other statements made by the notary in his individual capacity.

5. ———: ———: ———: ———: ———. Although the persons whose names appeared to the deed of trust were mythical and did not own the land, yet relator's loss cannot be made referable to this fact alone, since, if the notary had acted with integrity, he could not have certified to the acknowledgment at all, and if the certificate had been absent, the money would not have been lent and hence would not have been lost.

6. ———: ———: ———: ———: ———: **Substantial or Nominal Damages.** In such case, there is no ground for letting the surety off with the payment of nominal damages. The fraudulent official act of the notary caused the loss. The notary used his official power to commit a fraud. The very object of the bond is to secure indemnity against the use of an official position for wrong purposes, and a loss caused thereby must be made good by those who signed the bond.

7. ———: ———: ———: **Rights of Sureties.** Although in the case of ordinary sureties their rights may be considered to be *strictissimi juris*, there is no room for the application of that rule in this case, for the very purpose of the bond is to provide indemnity for loss from dishonest official acts. Besides, surety contracts by sureties for hire are construed as are insurance contracts.

8. **APPELLATE PRACTICE: Judgment Affirmed if Sustainable upon any Theory.** The rule that the judgment of the trial court must be affirmed if it is possible to do so upon any theory applicable to the facts cannot be invoked to sustain the judgment where there is no dispute as to the facts, or where the judgment rendered shows that the fraudulent certificate was relied upon and that it caused the loss but only nominal damages were given upon an erroneous theory of law.

Appeal from Henry Circuit Court.—*Hon. C. A. Calvird,* Judge.

REVERSED AND REMANDED.

*Parks & Son* for appellant.

(1)  While the ordinary surety or guarantor is the favorite of the law, and his contract is construed lib-

erally in his favor, yet corporations whose business it is to issue contracts of guaranty and indemnity are to be classed as insurers, and their contracts must be interpreted by the principles and rules applicable to policies of insurance. Roark v. Trust & Safe Deposit Co., 130 Mo. App. 401; Long Bros. Grocery Co. v. U. S. Fidelity & Guaranty Co., 130 Mo. App. 421. (2) The law makes a notary's certificate evidence of the fact contained in it, and, if it should turn out to be false, the notary and not his confiding victim should suffer the consequences. State ex rel. v. Balmer, 77 Mo. App. 463; State ex rel. v. Ryland, 163 Mo. 280; State to the use v. Meyer, 2 Mo. App. 413; State ex rel. v. Hawkins, 103 Mo. App. 257; State ex rel. v. Grundon, 90 Mo. App. 257.

*Robt. F. Porter* and *James D. Lindsay* for respondent.

(1) All presumptions are indulged in favor of the right action of the trial court and it devolves upon appellant to show material error affecting the merits of the case, the appellate practice being that the judgment of the trial court will be affirmed if it is possible to do so on any theory of law applicable to the facts. Carroll v. Shooting the Chutes, 85 Mo. App. 563; Roche v. Walker, 81 Mo. App. 616; Hiller v. Cox, 210 Mo. 696; Bank v. Barbee, 198 Mo. 465. (2) There is no evidence in the record to show that plaintiff relied on the certificate of acknowledgment, as to identity of parties or that it influenced him in any degree in parting with his money or making the loan, consequently he was not entitled to recover in excess of nominal damages. All the cases hold that he must have parted with with value relying on the certificate in order to recover. State to use v. Meyer, 2 Mo. App. 413; State ex rel. v. Ryland, 163 Mo. 280. (3) The measure of damage where actual damage is suffered on account of a false

or defective acknowledgment is the value of the security which plaintiff would have received had the certificate been true, not exceeding the amount loaned with interest.    Under this rule the court could have rendered no other judgment as it is admitted the deed would have conveyed nothing if it had been genuine. State to use v. Plass, 58 Mo. App. 148; State to use v. Broughton, 58 Mo. App. 155.

TRIMBLE, J.—This action is upon the official bond of the defendant, John Ogden, who, as a notary public, certified a fraudulent acknowledgment to a deed of trust forged by him.    His co-defendant, the American Surety Company is the surety on said bond.

Relator is a German, fifty-six years of age without business training or experience except in farming, and resides on his farm not far from the town of Deepwater in Henry county, Missouri.    The said John Ogden, at the time of the certificate of which relator complains, was, and for some years prior thereto had been, a leading and respected citizen in said town, and president of the Farmers Bank of Deepwater.    He was also, and had been for years, a notary public, and engaged in the real estate, insurance, and loan business.

Relator had $1800 on deposit in said bank.    Ogden, knowing this, went to relator's home and told him he had a customer named Harvey who owned a certain eighty acres of land in St. Clair county worth $4000 situated two and one-half miles southeast of the farm of one Stehwein, about fourteen miles from where relator lived.    (Relator was well acquainted with the value of farming lands in that neighborhood, knew they were worth from $40 to $50 per acre, and that they were good tillable soils).    Ogden further told relator that his customer, Harvey, had an eastern loan on his farm which was about to fall due and that he wanted to pay it off by getting a new loan, and, as he, Ogden, knew relator had money in the bank, he, on be-

half of said customer, applied to relator for a loan on the land.

Later, Ogden returned with a note for $1800 payable to relator, due two years after date bearing six per cent interest and purporting to be signed by James Harvey and Mary Harvey. He also brought with him a deed of trust, written by him, which was in every way regular on its face. It purported to be from James Harvey and Mary Harvey, his wife, to John A. Grob, trustee for Joseph Matter, conveying eighty acres of land in St. Clair county, Missouri, described as the south half of the northeast quarter of section 14, township 39, range 24, given to secure said $1800 note and referring to it in apt and proper terms. The certificate of acknowledgment was in the form required by law and was signed by John Ogden as notary public under his official seal. He turned the note and deed of trust over to relator. He also showed relator an abstract of title which he had in his pocket and told relator he had prepared the papers for the loan of which he had theretofore spoken. Relator was not "scholar enough" as he says to know a piece of land by a description in the terms of a government survey and, therefore, could not tell whether or not the description contained in the deed described the farm Ogden had specified as the one on which the loan was to be made, nor could he tell "one thing from another in the abstract" never before having made a loan or transacted business of that nature. He had no suspicions about it, however, but readily took Ogden's word that the land was the farm he had in mind near that of his old friend Charles Stehwein, and that everything was all right. He did, however, examine the note and deed of trust and saw the signatures to them and that the deed of trust was acknowledged before Ogden as notary public.

Ogden allowed relator to keep the note but retained the abstract and deed of trust for the purpose of re-

cording the latter and having it shown on the former. Relator thereupon drew his check on the Farmers Bank of Deepwater for $1800 which Ogden cashed. All this occurred about or near the date of the note and deed of trust, October 8, 1912. About Thanksgiving thereafter, Ogden was arrested for forgery and was afterwards sent to the penitentiary. The deed of trust was never recorded by Ogden but was found among his personal effects, and it and the note were introduced in evidence.

It was admitted at the trial that no such persons as James Harvey and Mary Harvey existed; that they were fictitious persons; that the signatures to the papers were forged by Ogden, and that his certificate as notary public that they personally appeared before him as notary and were known by him to be the persons described in and who executed the said deed of trust and acknowledged it as their free act and deed, was false. It was also admitted that said Ogden was wholly insolvent.

The only answer filed was on the part of the defendant, the American Surety Company. This was a general denial coupled with a plea of contributory negligence in that relator failed to make any examination of the title to the land, and failed to make any investigation as to whether the Harveys owned the land or were in existence, and also failed to make any investigation as to the character, location, or value of the land described in the deed of trust. Defendant set up that such examination and investigation would have disclosed that the land was not owned by the Harveys, and that they were fictitious persons, that the land described in the deed of trust was not the land relator had in mind and specified to him and was not anywhere in the neighborhood of the locality two-and-one-half miles southeast of Stehwein, and was rough, broken, and unimproved land not worth above one-third of the amount lent by relator; that the land described

in said deed of trust was in reality owned by defend-
ant Ogden and another; that an investigation would
have disclosed such facts to relator and their discov-
ery would have prevented the loss. The answer fur-
ther set up that the acts which caused the loss were
the acts of John Ogden in his individual capacity and
not as a notary.

The reply put in issue the new matter set up in
the answer.

The case was tried before the court without a
jury. At the close of the trial, the defendant Surety
Company asked a peremptory instruction that plain-
tiff was entitled to nominal damages only as against it.
The trial court adopted this theory and gave effect
to the instruction by rendering judgment for plaintiff
against Ogden for $1800, but only for $1 and the costs
against the Surety Company. Thereupon relator ap-
pealed.

Under the law, notaries are authorized to take ac-
knowledgments of deeds, etc., and are required to cer-
tify the truth, under their official seals "concerning all
matters by them done by virtue of their offices." [Sec.
10,178, R. S. Mo. 1909.] They are required to give a
bond in the sum of $2000 which "may be sued on by
any person injured." [Sec. 10,181, R. S. Mo. 1909.]

The condition of the bond in question is that "the
said John Ogden shall faithfully perform the duties
of said office according to law." Under the statutes,
therefore, Ogden's official duty was not only to certify
to acknowledgments of deeds but to do so *with integ-
rity.* It was his duty to do this under the common law
for, by accepting the office, he contracted with very one
who employed him to perform his duty *with integrity,
diligence and skill.* [3 Blackstone's Comm. 165.] His
bond was for the faithful performance of the duties of
his office according to law, and although relator did not
employ him, yet the statute does not limit a right of
recovery to one who employs his services, but gives

a right of action on said bond to "any person injured." Relator, therefore, had a right to not only accept the truth of the facts stated in the certificate but also to rely on the assumption that Ogden had performed his official duty as notary with integrity. The law makes the notary's certificate evidence of the facts therein. [State ex rel. v. Balmer, 77 Mo. App. 463; State ex rel. v. Meyer, 2 Mo. App. 413; Joost v. Craig, 131 Col. 504, 82 Am. St. Rep. 374; People v. Bartels, 138 Ill. 322.]

If a notary makes a false certificate and an injury results therefrom to another, the notary and his sureties are liable. [State ex rel. v. Webb, 177 Mo. App. 60, l. c. 65; State ex rel. v. Hawkins, 103 Mo. App. 251, l. c. 257; Hatton v. Holmes, 97 Cal. 208; People v. Bartels, 138 Ill. 322.] They are liable whether the false certificate is valid or invalid if made in apparent conformity to legally constituted authority but in excess or perversion thereof and an injury results therefrom, because in such case the act is done by color of the office. [State ex rel. v. Ryland, 163 Mo. 280, l. c. 287.] Notaries are entrusted with high and important functions. Their certificates are made authentic evidence of titles by which we hold our lands and by which they pass from one to another and which endure from generation to generation. "Their responsibility is as high as their trust, and a notary who officially certifies as true what he knows to be false violates his duty, commits a crime, binds himself and binds his sureties." [Rochereau v. Jones, 29 La. Ann. 82, l. c. 85.]

So far as relator's alleged contributory negligence is concerned, he had a right to rely on the notary's certificate as being true and that the persons therein mentioned appeared before him and acknowledged the instrument. [State ex rel. v. Plass, 58 Mo. App. 148, l. c. 151.] Relator was not required to doubt the truth of the certificate and go out and verify its statements. [State ex rel. v. Balmer, 77 Mo. App. 463.] He was,

therefore, not guilty of negligence in relying thereon. [Joost v. Craig, 131 Cal. 504, 82 Am. St. Rep. 374.]

But defendant says that the false certificate was not the cause of relator's loss; that relator relied upon Ogden's personal acts and representations in telling him of the land, its location, ownership, value, etc., and that the surety is not liable for Ogden's acts as an individual. True, the surety is liable only for the official acts of the notary. But the evidence shows clearly that relator examined the deed of trust to see if it was acknowledged, and if the notary's certificate had not been thereon, relator would not have parted with his money. He relied upon the fraudulent certificate. The fraudulent acknowledgment was the last chasm to be bridged by Ogden on his way to the old German's money. It was the most important one, too, because no matter how certain relator may have been that Ogden's individual representations were true, he would not have lent the money if the certificate of acknowledgment had been absent. The fraudulent certificate, therefore, was not merely one of the causes of his letting go of his money. It was the efficient cause thereof, and, if it be necessary in a case of fraud, it was proven to be a proximate cause of the loss, since that result followed in a natural continuous and unbroken sequence from the false certificate and without which such result would not have occurred. It may be true that relator's confidence in the honesty of Ogden led him to accept Ogden's statements as to the location of the land and its ownership, but before he would part with his money he looked to see if the deed was acknowledged and if the fraudulent certificate had not been there his money would have been safe. The fact that the fraudulent certificate was one of a number of things inducing relator to part with his money and thereby suffer a loss does not prevent the certificate from being a cause, and a proximate cause, of such loss. For, though the official fraudulent act of the no-

tary be accompanied by other acts assisting in the production of the loss, yet if there is a natural and continuous sequence from such fraudulent official act to said result, and, but for that act, the result would not have happened, then such act is the cause, and the proximate cause, of the result even though another cause may have arisen and joined in producing the result.  If the false certificate of the notary "was necessary to the accomplishment of the loss" then relator may recover of the notary and his surety even though relator may have believed other statements made by Ogden.  [State ex rel. v. Meyer, 2 Mo. App. 413, l. c. 415; State ex rel. v. Hawkins, 103 Mo. App. 251; Joost v. Craig, 131 Cal. 504.]

It is said, however, that relator's loss was not caused by the false certificate since the Harveys never existed and did not own the land; and, if they had existed and the certificate had been true, still, as they did not own the land, nothing of value would have passed by the deed of trust to relator and hence his loss arose from that fact and not from the false certificate. We think that this is putting the cart before the horse, and that under the undisputed evidence the proposition should be reversed, and the true statement is that if it had not been for the notary's fraudulent certificate no money would have been lent upon the deed and consequently none would have been lost.  Even if the Harveys had existed and had owned the land and relator had personally known those facts, still he would not have loaned the money without the certificate of acknowledgment.  And if the certificate were untrue, then the Harveys, even if they had owned the land would not have been bound by the deed, and relator would have lost his money the same as he has now when the Harveys are mythical and do not own the land.  The notary's duty under the law, as we have seen, is to certify to acknowledgments with integrity.  If he had acted with integrity he could not have made this cer-

tificate *at all* because there were no such persons to appear before him and make the acknowledgment, and had it not been for the false certificate the money would not have been lent, and in that event there would have been no loss.

What has been said upon the question of the cause of relator's loss applies to the measure of plaintiff's damages as well. If the official fraudulent act of the notary caused the loss, then where is there any ground for saying that the surety is only liable for nominal damages? The notary is charged in this case with using his official position and power to commit a fraud upon plaintiff. "The very object of the bond is to obtain indemnity against the use of an official position for wrong purposes, and that which would obtain no credit except from it appearing to be a regular official act, is within the protection of the bond, and must be made good by those who signed it." [Doran v. Butler, 74 Mich. 643, l. c. 650.] Ogden made a false and fraudulent certificate and *used it to obtain the money* in violation of his duty as an official. His fraudulent official act was not only absolutely necessary to obtain the money, and therefore was a cause of the loss, but it was a proximate and not a remote cause thereof if it were necessary to show that, in a case like this. When *fraud* enters into a transaction it permeates and taints it throughout and reaches from the act to the resulting consequence. In this case, the damages arising from the fraudulent official act of the notary undoubtedly reached through the transaction to relator's loss and was the cause thereof, and the damage caused by the fraudulent official act of the notary is not separable from the damage caused by the fraudulent acts of Ogden as an individual. The undertaking of the surety on the bond in this case was that the notary would "faithfully" perform his official duty, and the statute give a remedy to any person in-

187MoApp4

jured. Although the rights of an ordinary surety are considered to be *strictissimi juris,* there is no room for the application of that rule here for the very purpose of the bond is to provide indemnity for loss from dishonest official acts. Indeed, contracts of suretyship made by surety companies organized for the purpose of furnishing surety for hire are construed as are contracts of insurance. [Roark v. City Trust, etc., Co., 130 Mo. App. 401; Long Bros. v. United States, etc., Guaranty Co., 130 Mo. App. 421.]

In support of the contention that it is liable only for nominal damages, defendant cites States ex rel. v. Plass, 58 Mo. App. 148 and State ex rel. v. Broughton, 58 Mo. App. 155. But the facts in those cases are so different from the facts in the case at bar that those cases are not in point.

The rule that the judgment of the trial court must be affirmed if it is possible to do so upon any theory applicable to the facts cannot be invoked to uphold the judgment rendered. There is no dispute as to the facts. The record shows that the judgment was in fact the mere sustention of defendant's peremptory instruction to render judgment against the Surety Company for nominal damages only. The judgment that was rendered shows that the court found that the fraudulent certificate was relied upon and that it was the cause of relator's loss, but that a judgment for only $1 was rendered against the Surety Company because of the trial court's view as to what was the measure of damages. This was a question of law. Under the facts of this case we think this question was erroneously decided. The judgment is, therefore, reversed and the cause remanded. All concur.