STANDARD ACC. INS. CO. v. STATE, for
Use and Benefit of Stangel.

No. 12755.

Court of Civil Appeals of Texas. Fort
Worth.

Jan. 7, 1933.

Rehearing Denied Feb. 18, 1933.

Bryan, Stone, Wade & Agerton and Brandon Stone, all of Fort Worth, for appellant.

Billingsley & Billingsley, of Fort Worth, for appellee.

DUNKLIN, Justice.

W. J. Stangel, as beneficiary under a statutory bond executed by Harvey P. Shead as notary public of the county of Tarrant and in the name of the state of Texas, instituted this suit against Shead and the Standard Accident Insurance Company as surety on the bond to recover the sum of $1,000, the amount named in the bond.

According to allegations in the petition, one Thomas C. Tripp, professing to be the agent of George F. Bond, negotiated a sale of a lot of land situated in the city of Fort Worth to the plaintiff and showed to him an abstract of title purporting to evidence title in George F. Bond, and induced the plaintiff to purchase the same for a consideration of $1,050. The consideration paid for the supposed purchase consisted of a check of even date with the deed, payable to the order of George F. Bond, drawn on the Exchange State Bank of Fort Worth for the sum of $847.25, and another check of the same date in the sum of $202.75, payable to the order of Hilburn & Cambron, real estate agents, drawn on the same bank. It was alleged that the notarial certificate of Shead to the deed was false and fraudulent, in that no such person as George F. Bond ever appeared before him and acknowledged the execution of the deed; that the name of George F. Bond signed to the deed was written by Tripp; and that plaintiff relied upon the truth of the certificate and was induced thereby to purchase the lot and pay the consideration above mentioned; and further that George F. Bond was in fact a fictitious person.

According to further allegations in the petition, the purported deed appearing in the abstract as having been executed by N. F. Dugan, of Albany, Ga., to George F. Bond, was a forgery; and after plaintiff's supposed purchase, Dugan, who was the real owner of title,

dispossessed him; and therefore the consideration plaintiff paid for the property has been totally lost to him.

Another allegation in the petition was to the effect that Shead was guilty of negligence in giving the certificate of acknowledgment.

The defendant Standard Accident Insurance Company filed an answer containing numerous special exceptions to the plaintiff's petition, including the defense of limitation of two and four years; also that since title was never vested in any person by the name of George F. Bond, but was vested in N. F. Dugan, the fictitious acknowledgment was not the proximate cause of plaintiff's loss; and further that the proximate cause of plaintiff's loss was his reliance upon the representations of Thomas C. Tripp that George F. Bond owned the lot evidenced by the abstract of title to the same, and an opinion given thereon by Dan E. Lydick, plaintiff's attorney, that title was in George F. Bond at the time the deed was made.

There were further allegations in the answer to the effect that plaintiff's loss could not in any event exceed $202.75, the amount of the check given to the real estate agents; that the check which plaintiff gave, payable to George F. Bond, was drawn on the Exchange State Bank of Fort Worth, Tex., and was indorsed, "Geo. F. Bond, by Shead & Tripp, by Thomas C. Tripp," and was delivered to the Texas National Bank of Fort Worth, and that bank then indorsed and delivered the check to the Exchange State Bank of Fort Worth, and it was paid by the latter bank. It was further alleged that the plaintiff therefore has a valid and subsisting cause of action against both of said banks which he is asserting in another suit pending on the docket of the court in which this suit was filed.

The defendant Harvey P. Shead filed a formal answer, embodying a general demurrer and a general denial only.

The trial was before a jury, and following are special issues with their findings thereon, omitting instructions submitted on some of those issues upon the hypothesis of certain answers to other issues:

"1. Did a man purporting to be George F. Bond appear before Harvey P. Shead and have his acknowledgment taken by the defendant Shead to the deed in question? Answer: No.

"2. Did the defendant, Harvey P. Shead, believe at the time said acknowledgment was taken that the man appearing before him was in fact George F. Bond? Answer: No.

"You are instructed in connection with the taking of acknowledgments that the Statutes of Texas provide as follows: 'No acknowledgment of any instrument of writing shall be taken unless the officer taking it knows or has satisfactory evidence on the oath or af-

firmation of a credible witness, which shall be noted in a certificate, that the person making such acknowledgment is the individual who executed and is described in the instrument.'

"3. Did the defendant, Harvey P. Shead, faithfully perform his duties as a notary public under the statute as cited above in making the certificate of acknowledgment in the deed in question? Answer: No.

"4. Was the failure of the defendant, Harvey P. Shead, to perform his duties as notary public, under the statutes, the proximate cause of the damage to the beneficial plaintiff, W. J. Stangel? Answer: Yes.

"5. At the time of taking the acknowledgment to the deed in question, did Harvey P. Shead know that the person, if any, who appeared before him and acknowledged such deed was Geo. F. Bond? Answer: No.

"6. In accepting the deed in question did the plaintiff, W. J. Stangel, rely upon the acknowledgment of Geo. F. Bond before Harvey P. Shead, as shown by the certificate thereon? Answer: Yes."

Upon that verdict of the jury, supplemented by the finding by the trial judge that plaintiff had sustained damages in the sum of $1,050 as prayed for in his petition, the amount paid by him for the lot, judgment was rendered against Shead, as principal, and the Standard Accident Insurance Company, as surety, for the sum of $1,000, and against Shead for an additional sum of $50. Judgment was further rendered in favor of the Standard Accident Insurance Company on its plea over against Harvey P. Shead for the sum of $1,000.

Harvey P. Shead has not prosecuted any appeal from the judgment, but an appeal has been presented here by the Standard Accident Insurance Company.

Article 5953, Revised Statutes 1925, reads:

"Any person appointed a notary public, before entering his official duties, shall execute a bond for one thousand dollars, to be approved by the county clerk of his county, payable to the Governor, conditioned for the faithful performance of the duties of his office; and shall also take and subscribe the official oath, which shall be indorsed on said bond, with the certificate of the officer administering the same; said bond shall be recorded in the office of the county clerk, and deposited in said office, and shall not be void on the first recovery, and may be sued on in the name of the party injured from time to time until the whole amount thereof has been recovered."

Chapter 2, title 115, Rev. Civ. Statutes of 1925 (article 6602 et seq.), prescribes the duties of a notary public and other officials authorized to take acknowledgments of deeds and other instruments for registration, and articles 6603 and 6604 of that chapter read:

"Art. 6603. The acknowledgment of an in-

strument of writing for the purpose of being recorded shall be by the grantor or person who executed the same appearing before some officer authorized to take such acknowledgment, and stating that he had executed the same for the consideration and purposes therein stated; and the officer taking such acknowledgment shall make a certificate thereof, sign and seal the same with his seal of office.

"Art. 6604. No acknowledgment of any instrument of writing shall be taken unless the officer taking it knows or has satisfactory evidence on the oath or affirmation of a credible witness, which shall be noted in his certificate, that the person making such acknowledgment is the individual who executed and is described in the instrument."

Article 6623 of the same chapter reads: "Any person injured by the failure, refusal or neglect of any officer whose duty it is to comply with any provision of this chapter shall have a right of action against such officer so failing, refusing or neglecting, before any court of competent jurisdiction, for the recovery of all damages resulting from such neglect, failure or refusal."

Shead's certificate of acknowledgment to the deed in controversy here was in accordance with the terms of article 6603.

[1-3] In briefs for appellant, counsel say that if George F. Bond was a real and not a fictitious person, and if title stood in his name, then the false certificate of the notary that he appeared and acknowledged the execution of the instrument would have given plaintiff a right of action, and the measure of his damages would have been the market value of the lot, not to exceed the amount of the notary's bond sued on. But it is further insisted that since no title was ever vested in any person by the name of George F. Bond, then the lack of such title and, not the false certificate of the notary, was the proximate cause of plaintiff's loss; and further that in the latter event plaintiff was not entitled to more than nominal damages by reason of the fact that he really lost nothing of value by reason of the false certificate. Numerous authorities are cited which apparently support those contentions, such as Ross v. New Amsterdam Casualty Co., 56 Cal. App. 254, 205 P. 43, by the California District Court of Appeals; State ex rel. Scruggs v. Packard, 199 Mo. App. 53, 201 S. W. 953, by the Kansas City Court of Appeals; Anna Mlekus v. Maryland Casualty Co., 192 Wis. 472, 213 N. W. 287, 51 A. L. R. 1478; State ex rel. Park National Bank v. Globe Indemnity Co., 29 S.W. (2d) 743, by the Kansas City Court of Appeals; and other decisions cited in those cases.

Many authorities are cited by appellee to sustain the recovery, among which is the case of People v. Butler, 74 Mich. 643, 42 N. W. 273, 276, in which it appeared that a notary had given a false certificate of acknowledgment to a mortgage, which he himself had forged, and by representing himself to be the agent of the one whose name was signed to the mortgage, he collected the money advanced by the plaintiff therefor, thus taking advantage of the forgery. In that case the Supreme Court of Michigan had this to say: "The defendant is surety upon the bond of Ashley, which is conditional that he will faithfully discharge the duties of his office. If he had done so no loss would have occurred, as the mortgage, if produced, would have been genuine, and the certificate a true one. He actually obtained the money, and did it by means of his office enabling him to make a certificate of acknowledgment. This certificate is false, and the condition of his official bond is not kept and performed. He has not faithfully discharged the duties of his office, but has prostituted it to obtain this money. If the surety on this bond could not be held liable under the circumstances here shown, then there is no safety to the public in official bonds. We think the proximate cause was the false certificate, and the defendant must be held liable. * * * What, Ashley did in the present case he was enabled to do by reason of his official position,—his authority to take the acknowledgment of the mortgage. It does not lessen his liability on his bond because he coupled with the act of making the false certificate a false statement that he was the agent of King and wife to make the loan and receive the money. The mortgage and note would not have been taken by Eddy, nor the money paid, had it not been for the certificate stating that King and wife had acknowledged the execution of the mortgage."

In State ex rel. Meinholtz v. American Surety Co. of New York (Mo. App.) 254 S. W. 561, 563, the following is said:

"It is not necessary that Crone's false acknowledgment constituted the sole cause of relator's loss. This rule is firmly fixed in our decisions. See the ruling of this court in State ex rel. Savings Trust Co. v. Hallen (Mo. App.) 196 S. W. 1067.

"The wrongful act performed by Crone during his term of office, that is, in affixing the false acknowledgment to the deed of trust, certainly induced the loss to relator, for without the false acknowledgment relator would not have relied thereon, and the deed of trust could not have been recorded and would not have appeared in the certificate of title, and relator would not have bought such spurious deed of trust. Whatever else may have contributed to cause the loss to relator, the wrongful conduct of the notary indeed was the proximate cause of the loss. [Citing numerous other decisions by the appellate court of Missouri.]

. "In State ex rel. v. Ogden, supra [187 Mo. App. 39, 172 S. W. 1172], Judge Trimble, for the Kansas City court of appeals, clearly and

succinctly states the rule thus (187 Mo. App. 39, loc. cit. 47, 48, 172 S. W. 1172, loc. cit. 1174): 'The fact that the fraudulent certificate was one of a number of things inducing relator to part with his money and thereby suffer a loss does not prevent the certificate from being a cause, and a proximate cause, of such loss. For, though the official fraudulent act of the notary be accompanied by other acts assisting in the production of the loss, yet if there is a natural and continuous sequence from such fraudulent official act to said result, and, but for that act, the result would not have happened, then such act is the cause, and the proximate cause, of the result, even though another cause may have arisen and joined in producing the result.' "

To the same effect are the decisions in Boden v. Harter, 240 Ky. 138, 41 S.W.(2d) 920, and the same case in American Surety Co. v. Boden, 243 Ky. 805, 50 S.W.(2d) 10.

In many of the decisions cited a discussion of proximate cause was intermingled with that of the measure of damages, while in others it was held that the measure of damages where the person, who, according to the certificate, purported to acknowledge the certificate, really owned the property, was what the plaintiff would have realized had that person signed and acknowledged the deed in fact. Those decisions are distinguishable from this case, since it affirmatively appears that George F. Bond, if there was such a person, never owned any title to the land in controversy. Shead's fictitious certificate of acknowledgment was in direct violation of his duties as prescribed by the statutes and was therefore negligence per se. His bond, which was signed by himself and appellant as surety, was a contract binding them to answer in damages for that tort to any one who was injured thereby, and therefore the suit was in covenant to answer for the tort. It is a familiar rule that all tort-feasors are answerable, jointly and severally, for the wrongs committed through their joint participation therein; and we believe it clear that notwithstanding the fact which is apparent on the face of the record that Tripp participated in the fraud perpetrated upon plaintiff Stangel, the act of Shead in giving a false certificate which the jury found induced the plaintiff to part with his money was, to say the least, a proximate cause of that loss, if not the sole proximate cause. And it is to be noted here that there is an absence of any finding by the jury that there was any other contributing proximate cause, nor did appellant request the submission of such an issue. 20 R. C. L. § 89, p. 102; Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

Appellant insists that if plaintiff is entitled to recover, then $202.75, the amount paid to the real estate brokers, would be the extent of his damages. In that connection it is argued that although there was no finding by the jury that George F. Bond, who purported to sign the deed, was in fact a fictitious person, yet, as against plaintiff, it must be presumed he is so, since plaintiff in his petition expressly alleged that such was true; and that since the bank had no lawful authority to pay the draft drawn in favor of George F. Bond, a fictitious person, it still owes the plaintiff the amount so paid out and charged to his account, and therefore plaintiff has not sustained any loss by reason of the giving of the check payable to the order of George F. Bond for the sum of $847.25. With this contention we are unable to agree. As the jury found, and as the evidence abundantly shows, Stangel, in reliance on the false certificate of the notary, not only gave that check, but honored it by permitting it to be charged to his account in the bank, and thereby sustained the loss of the amount. The course followed by Stangel was the one fully justified and to be reasonably expected if the notarial certificate had been true. The check was issued in the name of the very person who Shead certified had signed the deed and who, therefore, he knew would receive the consideration for the deed. If George F. Bond was a fictitious person, Shead was chargeable with knowledge of that fact and that the check would be collected by some one claiming the right to collect it in that name, as was done. It does not lie with Shead or his surety on his official bond now to complain that plaintiff should have known that George F. Bond was a fictitious person and should not have issued the check in his name, or that after its issuance and payment should have looked to the bank for reimbursement of the amount so paid by it on the check; which would be the logical effect of the contention now under discussion. Furthermore, plaintiff's cause of action, which included the measure of damages, accrued as soon as his check was cashed by the bank and charged to his account. The time of its accrual did not depend upon the contingency of his ability, if any, at a later date when he discovered the fraud, to compel the bank to restore to him the amount it had paid on the check and which payment he had recognized as proper three or more years prior to his discovery of the fraud practiced on him and the institution of this suit. And it is to be noted that the right of plaintiff, if any, to that relief against the bank could not be conclusively determined in this case, since the bank was not a party to this suit, and therefore a determination of that issue against it would not be binding upon the bank in another suit against it for the same relief. If the alleged right of action in plaintiff to hold the bank liable for the check, which was charged to his account, would preclude a recovery in this case, then it seems to us the same could be said of plaintiff's right of action, if he had elected to assert it, against Tripp for the amount of the check which he collected, a

proposition which we believe to be manifestly untenable.

Decisions cited by appellant, to the effect that a bank on whom a check is drawn has no right to charge the same to the drawer's account if the check is paid on a forged indorsement of the payee's name, are distinguishable from this case, for the reason that in those cases the payee was not a fictitious person, but a real person who was the rightful owner of the check and entitled to collect it, and who was the only one the drawer intended should collect it; the cases so cited being such as First National Bank v. Whitman, 94 U. S. 343, 24 L. Ed. 229; State ex rel. Missouri Abstract Co. v. Globe Indemnity Co., 222 Mo. App. 918, 9 S.W.(2d) 668.

For the reasons just indicated, we conclude that there is no merit in appellant's contention that the false certificate given by Shead was not the proximate cause of plaintiff's loss and that he was entitled to only nominal damages resulting from the giving of the check payable to George F. Bond for the sum of $847.25, rather than the amount of that check for which he was awarded a recovery. T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; 8 R. C. L. pp. 429 to 434; Brittain v. Monsur (Tex. Civ. App.) 195 S. W. 911.

And it is to be noted further that no issue of contributory negligence on the part of plaintiff for failing to sooner discover that George F. Bond was a fictitious person, and thereafter to take steps against the bank for reimbursement of the amount of the check so issued in his name, was submitted to the jury; and no complaint is made here of a failure of the court to submit such an issue. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

■ Nor did the court err in refusing to admit in evidence the petition filed by plaintiff Stangel in another suit to collect from the bank the amount paid on the check in favor of George F. Bond, on the theory that Bond was a fictitious person and therefore the bank could not rightfully charge it to plaintiff's account. Counsel for appellant say in their briefs that the evidence so offered was to show that plaintiff had repudiated the payment of the check; but we fail to perceive how it can be said that such a suit amounted to a waiver of the rights asserted by plaintiff in this suit, and hence the evidence offered was immaterial to any issues in this controversy.

■ This suit was upon Shead's official bond evidencing a contract in writing to pay any person injured by failure of Shead to faithfully perform his duties as a notary. In the absence of that written obligation it may be that an action against Shead for damages would be barred by the statute of limitation of two years; but the suit on his official bond would be governed by the statute of limitation of four years, and it was instituted within that period and therefore was not barred as insisted by appellant; irrespective of the further question whether the running of limitation would not begin until plaintiff discovered the fraud, until March, 1924; the suit having been instituted in February, 1927. Hillman v. Gallagher, 103 Tex. 427, 128 S. W. 899.

■■ Before the deed in controversy was executed a contract purporting to be signed by George F. Bond, agreeing to sell the property to plaintiff but with no certificate of acknowledgment thereto, on which plaintiff deposited $50 as forfeit money after also executing it. That contract was in evidence, and appellant has assigned error to the refusal of the court to admit in evidence the proffered testimony of the plaintiff that he did not know that there was no certificate of acknowledgment in the name of George F. Bond to that contract. Appellant insists that such testimony would have tended to show that plaintiff did not rely on Shead's certificate of acknowledgment to the deed. We cannot say that the ruling of the court that that testimony was immaterial was reversible error, in view of all the circumstances in evidence. And we have reached the same conclusion on another assignment of error to the action of the court in sustaining an objection to a question propounded to Dan E. Lydick, who, as attorney for plaintiff, examined the abstract and passed on the sufficiency of the deed, as to whether or not he knew a deed without an acknowledgment of the grantor would pass title; the ruling of the court being that such testimony was immaterial.

■ Complaint is made of a statement by counsel for plaintiff in his argument to the jury, to the effect that Shead, who had testified that he was an attorney at law, owed a higher duty when acting as a notary than other notaries. Counsel for appellant objected to that argument at the time as "not correct," but the objection was overruled. Since the falsity of Shead's certificate was established by an overwhelming weight of the evidence and was in violation of the express provisions of the statutes, it is improbable that the argument resulted in injury to appellant.

All assignments of error are overruled, and the judgment in favor of plaintiff Stangel against appellant is affirmed. The judgment in favor of appellant over against Shead, of which no complaint is made, is left undisturbed.