**STATE of Missouri ex rel. and to the Use of Raymond F. KOSTE, Respondent,**

v.

**MARYLAND CASUALTY COMPANY OF BALTIMORE, a Corporation, Appellant.**

No. 48390.

Supreme Court of Missouri,

En Banc.

March 13, 1961.

Robert P. Stanislaw, St. Louis, for respondent-relator.

David G. Dempsey, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for appellant, Maryland Cas. Co. of Baltimore.

HYDE, Chief Justice.

This is a suit on the bond of a notary public. See Sec. 486.050, RSMo, V.A.M.S. Plaintiff had judgment for substantial damages (the amount relator paid to the notary for an automobile) and defendant appealed to the St. Louis Court of Appeals. The Court of Appeals reversed and remanded with directions to enter a judgment for nominal damages only (State ex rel. and to Use of Koste v. Maryland Cas. Co. of Baltimore, 335 S.W.2d 510) considering that this result was required by our deci-

sion in State ex rel. Park Nat. Bank v. Globe Indemnity Co., 332 Mo. 1089, 61 S.W.2d 733. We transferred the case on application of relator.

The pleadings and facts are detailed in the opinion of the Court of Appeals and are adopted by reference. For this opinion it is sufficient to state the following facts. Theodore Lesch, a notary, was a used car dealer operating under the names of S & L Motor Company and Auto Sales & Listing. Lesch sold relator a 1956 DeSoto he did not own and received in payment relator's check for $1,500 and his 1951 De-Soto. This trade was made Sunday, February 23, 1958; the check relator gave Lesch was dated February 25th because it was necessary to transfer funds from his savings to his checking account. Relator left his 1951 DeSoto and took the 1956 DeSoto; he received an invoice for this car from Lesch and signed a blank application for transfer of title which he left with Lesch to complete. Lesch said "he would take care of the transfer of title and everything"; but relator told him he would rather pay the sales tax and attend to the transfer himself. Lesch said he would have the title to the 1956 DeSoto the next night. The next evening Monday, February 24th, relator brought the title certificate for his 1951 DeSoto to Lesch. Lesch told him the girl he employed normally filled out all applications, took them to the local Department of Revenue License Office and made the required payments; that he forgot to mention to her that he didn't want her to take relator's application with others on hand; and that relator didn't have to pay him if he didn't want to; but said he would get his certificate of title through the mail from Jefferson City. Lesch then handed him the pink slip which the License Office gives as a receipt for such an application for transfer with his notary seal on it and his signature as notary showing that Dorothy Meyer (apparently a fictitious person) representing the stated seller "S & L Motor Co., Inc." had sworn to the required statements concerning the sale to relator. Relator said he accepted it because it was notarized and looked official to him. Relator's signature was also on it where he had signed it in blank on Sunday.

An application for transfer form has four sheets with carbon paper between so that the same signatures, writing, figures and notary's seal impression appear on all. The top sheet is white and the second is yellow; both are sent to Jefferson City by the local License Office, which keeps the third, blue, sheet. The fourth, pink, sheet is delivered to the applicant as his receipt. This was the sheet delivered by Lesch to relator. However, he had not taken the application to the License Office and in place of the validating marks, which would have been placed on all sheets when received by that office, showing date of receipt, Lesch had filled in the date in the proper space with the same typewriter on which the other information thereon had been typed. Relator, the next day, Tuesday, February 25th, made arrangements at his bank for the $1,500 check to be paid and also took Lesch a check for $42.50 to pay the sales tax and transfer fees required with the application for transfer which Lesch said he had paid. The payee of relator's $1,500 check was Auto Sales & Listing (put on the check with a rubber stamp); and the payee of the $42.50 check was S and L Motor Company. It was not shown whether either were corporations or merely names under which Lesch operated.

▪ The trial court made the following findings of fact, which we find are fully supported by the evidence: "That the facts stated in the affidavit in evidence were false; that no such person as Dorothy Meyer executed such affidavit; and that on February 24, 1958, Theodore Lesch knew that such facts were false and that Dorothy Meyer had not executed the said affidavit. That relator, Raymond F. Koste, inspected the document in evidence containing the said affidavit on February 24, 1958; that he observed the jurat of The-

odore Lesch thereon; that he thereafter allowed his check for $1,500.00 to be honored by his bank, delivered to Theodore Lesch a properly assigned certificate of title for the 1951 DeSoto automobile mentioned in evidence and delivered to Theodore Lesch his check in the additional amount of $42.50; and that relator would not have done the aforesaid acts but for the presence of the notary public's jurat."

Clearly Lesch breached the conditions of his bond ("shall faithfully perform the duties of his said office, according to law") and the only issue is whether such breach was the proximate cause of the loss sustained or at least a proximate cause, namely one of the direct concurring causes. For the reasons hereinafter stated our conclusion is that it was one of the direct concurring causes.

The Court of Appeals considered that our decision in State ex rel. Park Nat. Bank v. Globe Indemnity Co., supra, required the result reached. However, in that case (61 S.W.2d loc. cit. 736) we said: "The facts found by the trial court make only a case of negligence in the performance of official duty. There was, in fact, neither pleading nor proof that the defendant notary was in any way a party to the fraudulent scheme of Lasister." The Court of Appeals in this case followed the ruling of the Supreme Court of Wisconsin that on the issue of proximate cause it makes no difference whether the false certificate be the result of fraud or negligence, stated in Governor of Wisconsin ex rel. Mlekus v. Maryland Casualty Co., 192 Wis. 472, 213 N.W. 287, 288, 51 A.L.R. 1478. (See annotation, 17 A.L.R.2d 948, for other cases including those cited by defendant; see also annotation, 18 A.L.R. 1295.) In the Mlekus case, a notary forged a mortgage of fictitious persons on nonexistent property, with a false acknowledgment made by him as notary, then sold it to get the purchaser's money for himself. The court held (4 to 3) against liability of the notary's surety on the ground that

"there was no property mortgaged"; so that "the mortgage would have been of no value whatever, no matter whether the certificate was false or genuine." Although this rule properly may be applied to a single act of negligence or even constructive fraud of which someone else takes advantage, we do not think it applicable when a notary's fraudulent certificate is one element of a chain of elements which are a part of a notary's plan to defraud someone for his own benefit.

We applied the rule of value of the security, in the Park National Bank case, to a notary's negligent mistake in certifying an acknowledgment without sufficient proof of identity (61 S.W.2d loc. cit. 736) and we think it is a sound rule for liability of a notary's surety for such negligence. We think it was correctly pointed out in earlier opinion of the Kansas City Court of Appeals in the Park National Bank case (29 S.W.2d 743, loc. cit. 746) that for a loss caused by such negligence "the measure of damages is the value of the security which the mortgagee would have received had the certificate been true." However, we have the view that the situation as to proximate cause is entirely different where the notary by actual active fraud uses his false certificate as a part of his fraudulent plan to get another's money for himself, as did the Kansas City Court of Appeals in State ex rel. Matter v. Ogden, 187 Mo.App. 39, 172 S.W. 1172, 1175. In the Ogden case, a notary forged a note and deed of trust of fictitious persons with a false acknowledgment made by him as notary and sold it to the relator therein. It was claimed that the loss was not caused by the false certificate (the persons named not having title to the land) but by the notary's personal acts and representations. The court said: "Ogden made a false and fraudulent certificate and *used it to obtain the money* in violation of his duty as an official. His fraudulent official act was not only absolutely necessary to obtain the money, and therefore was a cause of the loss, but it was a proximate and not a remote cause

thereof * * *. When *fraud* enters into a transaction it permeates and taints it throughout and reaches from the act to the resulting consequence. In this case, the damages arising from the fraudulent official act of the notary undoubtedly reached through the transaction to relator's loss and was the cause thereof, and the damage caused by the fraudulent official act of the notary is not separable from the damage caused by the fraudulent acts of Ogden as an individual." In the Park National Bank case (29 S.W.2d loc. cit. 748) the Kansas City Court of Appeals thus distinguished the Ogden case from the situation presented therein: "[W]hen a man acts in his official capacity as a notary to do one of the wrongful things necessary to carry a fraudulent scheme to fruition, and in his individual capacity does other fraudulent acts necessary to the perfection of the fraudulent scheme, he is liable as an official for the damage resulting from the perpetration of the fraud and for all of the acts which constitute a part of the criminal scheme. The doctrine is analogous to the doctrine that every coconspirator is liable for all of the acts done in furtherance of the conspiracy."

The Ogden case has been cited with approval in Luttrell v. Columbia Casualty Co., 136 Cal.App. 513, 28 P.2d 1067; Aetna Casualty & Surety Co. v. Commonwealth for Use of Andres, 233 Ky. 142, 25 S.W.2d 51; United States Fidelity & Guaranty Co. v. State for Use of Ward, 211 Miss. 864, 53 So.2d 11; State ex rel. Meinholtz v. American Surety Co. of New York, Mo.App. 254 S.W. 561; Stemmons v. Akins, Okl., 283 P.2d 797; Standard Accident Ins. Co. v. State for Use of Stangel, Tex.Civ.App., 57 S.W.2d 191; see also following Pennsylvania cases: Commonwealth to Use of Miller v. Doak, 352 Pa. 380, 42 A.2d 826; Commonwealth to Use of Willow Highlands Co. v. United States Fidelity & Guaranty Co., 364 Pa. 543, 73 A.2d 422, 17 A.L.R.2d 943. State to Use of Mathews v. Boughton, 58 Mo.App. 155, relied on by the Court of Appeals, may be distinguish-

able from the Ogden case, because the relator therein sent money to Boughton to loan which Boughton embezzled and then concealed his embezzlement by sending relator forged notes and deeds of trust with false acknowledgments thereon. The Court said: "It thus appears from the relator's own evidence that he never parted with any value on the faith of Boughton's official acts." However, to the extent that the Boughton case could be construed as in conflict with the Ogden case it should not be followed.

The Wisconsin Mlekus case held it was necessary to carefully distinguish between the notary as an individual and as an official; that the notary made the false representations as an individual and these were the cause of the loss; that he made the false certificate as an official but this did not cause the loss because the same loss would have resulted whether the certificate was true or false since the mortgage would have been worthless either way. The reasoning of the dissenting opinion therein was that but for the forged acknowledgment the mortgage would not have been purchased from the notary; that the forgery of the acknowledgment by the notary was an essential link in the fraud perpetrated on the purchaser by him; and that liability of his surety should follow because the forged acknowledgment was a necessary element to the accomplishment of his fraudulent scheme. It is our view that, in the situation presented, the fraudulent conduct of Lesch as a notary cannot be separated from his fraudulent individual conduct as a used car dealer; that both were deliberately combined as essential parts of one complete fraudulent scheme to dishonestly obtain relator's money without giving him anything for it; and that relator would not have parted with his money (by thereafter making a deposit in his checking account from his savings) but for the deception practiced upon him by means of the false certification by Lesch as a notary. Therefore, we find this false certification was an inseparable part of

and an essential element of the fraudulent scheme of Lesch to get relator's money for himself, without which this could not have been accomplished. For this reason, we hold that it was one of several proximate causes which united to produce relator's loss and that defendant is liable as surety on Lesch's official bond.

Relator also has appealed, his appeal being from the judgment of the trial court denying his claim for damages and attorneys' fees for vexatious refusal to pay. We think it is obvious that it was reasonable to litigate the legal issue involved herein under the condition of the law in this state, with apparently conflicting opinions in the courts of appeals and no clear determination by the Supreme Court. Furthermore, conflicting decisions in other states also made this an even more debatable question.

The judgment of the trial court is affirmed.

All concur.