STATE OF MISSOURI, to use of A. KLEINSORGE, Administrator, etc., Respondent, *v.* HERMAN MEYER *et al.*, Appellants.

### June 10, 1876.

1. A notary public who falsely certifies that he is personally acquainted with the grantor in a deed, whom he does not know, and who is personated by another, is liable to all persons damaged by such false certificate.

2. In an action for damages for such a false certificate, it will not avail anything for the notary to say he was not aware of its falsity, or that he believed it to be true. It is his duty to know it to be true.

3. It is not error to refuse to instruct the jury, where there have been no facts proved to which the instruction asked could apply.

4. Advantage cannot be taken in an appellate court of an informality or defect in a pleading to which no objection was made in the trial court.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*Davis & Smith*, for appellants.

*Farrish & Griffin*, for respondent, cited : Shear. & Redf. on Neg., sec. 423.

GANTT, P. J., delivered the opinion of the court.

This suit was brought to the April term, 1872, of the St. Louis Circuit Court, against Meyer and his sureties, on his bond as notary. This bond was dated April, 1869, and was conditioned for the faithful performance of the duties of the office of notary. The petition alleged that, prior to April 27, 1869, Herman Kleinsorge placed in the hands of Kleinschmidts, two of defendants, $1,500, to be lent for him upon good and sufficient real estate security in the city of St. Louis ; that a person personating William Shultz represented himself to Kleinschmidts as the owner of certain real estate in St. Louis ; that thereupon the title was examined, ascertained to be in William Shultz, a deed of trust was prepared by Kleinschmidts, as agents of Kleinsorge, and the person personating Shultz executed and acknowledged the same before Meyer, who certified that he was personally acquainted with William Shultz, and that he had acknowledged the deed was his. Then Kleinsorge took the deed, and paid to the imposter $1,500. That, at the date of this transaction, William Shultz was in fact the owner of the property described in the deed of trust ; that he was a well-known person, residing with his family on the property supposed to be incumbered by the deed ; that he never executed this deed, nor authorized its execution ; that Meyer negligently certified to a false state of facts, whereby Kleinsorge was damnified, and judgment was prayed against Meyer and his sureties accordingly. The answer of the Kleinschmidts (Meyer not being served) admitted that Meyer was appointed notary, and that they executed the

bond set out in the petition, and proceeded to deny every other allegation of the petition. There was a trial in February, 1875, whereat plaintiff had a verdict and judgment for $1,762.50, and, after motion to set the verdict aside, an appeal was taken to the general term, and thence to this court. By the bill of exceptions it appeared that a fraud had been practiced by some one personating William Shultz; that this person had, in the name of Shultz, called upon Kleinschmidts, had gone with them to show the property, had spoken to a person there whom he called "aunt," and had successfully imposed himself upon both Meyer and the Kleinschmidts as the veritable William Shultz, and owner of the land. This person appears to have been a young man about twenty years of age. He seems to have introduced himself to the defendants, and they appear to have received his assurances of his personality with very credulous faith, without any suspicion, and without any inquiry becoming a prudent man. Thus acting, Kleinschmidts put out the money of Kleinsorge, and Meyer took the acknowledgment of the rogue, and made his certificate. The money of Kleinsorge was lost by reason of the want of care exercised by Meyer. Others, also, may have been guilty of contributory negligence; but, if the careless act done by Meyer was necessary to the accomplishment of the loss, there can be little doubt that, in a proper form of action, he alone may be made answerable for the resulting damages— leaving aside all questions of the adjustment of the burden among the several parties who shared in the work of negligence to be settled in another proceeding. In this case the action is brought against Meyer alone—that is, he alone is charged as the guilty party—though his sureties are sued along with him, the joining of them with him is not due to the fact that they, together with him, were guilty of negligence, but that they, as his sureties, undertook that he would be diligent and faithful in the performance of his duties as notary.

When the evidence (which, at lowest, tended to prove the statements of the petition) was put in, the court instructed the jury :

1. " That, if they believed from the evidence that the person who signed the deed of trust read in evidence was not William Shultz, and was not personally known to the defendant Meyer to be William Shultz, or proven to be so by the sworn testimony of two witnesses, and that the defendant Meyer took the acknowledgment of said person without personal knowledge as to his identity, or without having such identity established by the sworn testimony of two witnesses, and that, by reason of such action on the part of said defendant Meyer in taking said acknowledgment, the person falsely representing himself to be William Shultz obtained the sum of $1,500 from Herman Kleinsorge, and that, in consequence thereof, the said sum became lost to said Kleinsorge—then, if the jury further believe, etc., they will find for the plaintiff.   But the loan from Kleinschmidts to the person representing himself to be William Shultz must have been made in consequence of, and through reliance upon, the certificate of the defendant Meyer as to the identity of such person.   Hence, if the jury believe that the agent of Kleinsorge instructed the defendant Meyer to deliver the money to the person representing himself to be William Shultz, and did so—but in consequence of his belief that said person was Shultz, based upon the supposed correction [*sic*] of the defendant's certificate, but by reason of his having become satisfied as to said identity from evidence or information other than such certificate, then the jury will find for the defendant."

The defendant excepted to this instruction, and asked the following, which the court refused, defendants excepting :

1. " That, upon the evidence introduced by the plaintiff, the plaintiff cannot recover."

2. " If the jury believe from the evidence that the defendant Herman Meyer, at the time he executed the certificate

of acknowledgment to the deed of trust in evidence, had reasonable cause to believe, and did believe, that the facts certified by him in said certificate to be [*sic*] true, then the plaintiff cannot recover, although they may find that all the facts so certified to are not true."

3. "If the jury believe, etc., that Theodore Kleinschmidt. was the agent of Herman Kleinsorge in making the loan, secured by the deed of trust from William Shultz to Kleinsorge's trustee, filed for record April 27, 1869, and that said Theodore Kleinschmidt directed said Meyer to loan said money so secured by said deed of trust to the person who signed said deed of trust, and take his deed of trust on the property therein described therefor, then the plaintiff cannot recover in this action."

4. "If the jury believe from the evidence that Herman Meyer, at the time he certified to the acknowledgment in question, honestly believed that he knew the facts certified to in said certificate, and that said facts were true, then the plaintiff cannot recover in this action."

5. "If the jury believe from the evidence that, when the defendant Herman Meyer took the acknowledgment of the deed of trust in evidence, he in good faith believed he knew the person signing said deed to be William Shultz, the person who executed said deed, and who owned the property therein described, then the plaintiff cannot recover."

6. "The defendant asks the court to instruct the jury that the plaintiff cannot recover in this action unless they find that the defendant Herman Meyer, at the time he took the acknowledgment to the deed of trust, negligently and maliciously certified to the identity of the person executing the same, with intent to defraud the plaintiff."

There were some facts in relation to the transaction that should be stated, with a view to the understanding of the question arising on this record.

The young man who personated William Schultz is

declared, by Mrs. Shultz, to have been twenty years of age in 1867, or twenty-two years old in 1869, when the alleged forging was committed. Meyer testifies that he was a young man, about twenty-five years old, of reddish or sandy hair, and tall. His name appears to have been Ostollok. It appears that William Shultz bought the lot, which the forged deed professed to incumber, in 1860. This fact we must assume to have been known to the defendant Meyer, (and to the other defendants also, if they saw the abstract of title). Now, if the testimony of William Shultz be taken to mean that Ostollok was, and appeared to be, in 1869, of the age of twenty-two years, it follows that *he* must have bought the lot, if he were William Shultz, when he was thirteen years of age. If he was, or seemed to be, of the age of twenty-five years, in 1869, then it must have appeared to all that made themselves acquainted with the history of the title that, if the person claiming to be Shultz was really he, he must have bought the land at the age of sixteen years. This comparison of dates does not appear to have arrested the attention of Meyer, or either of the Kleinschmidts. In short, a credulity and negligence beyond bounds would seem to have characterized all their proceedings. There is no room to impute bad faith to them. It rather appears that both the Kleinschmidts and Meyer would have been willing to embark their own money on the venture they selected for Kleinsorge, but that they conducted themselves throughout with a singular disregard of all the precautions which are ordinarily suggested by experience to men of adult years is manifest. They seem to have been inquisitive where inquiry was of small importance, and wholly incurious as to points where it was vital. They asked Leibering, who kept a saloon not far from the house where Ostollok at the time resided, not if he knew the name—the personality of the man—but whether he was married. Leibering did not know the man's name at all, a matter which—as Leibering has been keeping a saloon at that

place for twenty years, and Shultz had owned a lot in the neighborhood for nine years, and had occupied a house on it for at least seven years—ought certainly to have prompted some further inquiry ; had seen his face before, and, in the language of Kleinschmidt, " said he knew him [the party pointed out by witness] very well by sight, but did not know much about him." Afterwards, when Ostollok came to execute the deed of trust in the name of Shultz, the inquiry whether he was a married man was resumed, and a person unknown to the inquirers by name at the time, but with whose general appearance they were familiar, was called in to determine, not whether the person offering to execute the deed was really William Shultz, but whether he was a married man. This question was put to, and answered by, the person called in when the deed was executed. His name appears to be Langer. He was not examined at the trial, nor was his absence accounted for.

1. We are quite clear that it is the duty of a notary or other officer, taking an acknowledgment of any party to a deed, to exercise care to avoid a mistake as to the identity of the cognizor, and, when he is not acquainted with such party, to require due evidence of his personality before certifying to the fact that he is satisfied of it. No one has a right to be satisfied of such a fact, when the interests of third persons are involved, upon anything short of legal evidence ; and, as we have used this expression, it becomes us to explain what we mean by it.

First, if the party offering to acknowledge a deed be known personally to the officer taking the acknowledgment, that fact shall be certified. Wag. Stat. secs. 13, 14, p. 275. But what is meant by personal knowledge of any one's being the person he professes to be? Clearly, such a faint presumption of the truth of the profession as would arise from the statement of the party himself is not what the law here means ; for the statute quoted carefully discriminates between such personal knowledge and the mere

assurance of any number of credible witnesses. It speaks, in the one case, of the party being personally known to the party taking the acknowledgment; and, in the other, of the party being proved to be the person whose name is subscribed to the instrument by at least two credible witnesses, whose names and places of residence shall be inserted in the certificate.

It is not easy to give a definition of what will constitute "personal knowledge." Every one knows that two intimate friends, who have known each other from childhood to mature age, living in the same neighborhood all that time, may, in the fullest and most unreserved sense, be said to have such "personal knowledge" of each other. But, if a stranger be introduced by a respectable person into any company, it is generally safe to assume that he is what he professes to be, although the person making the assumption has nothing for it but his reliance in the habits of accuracy of the introducer, who, in his turn, may be relying on similar habits in some one else, on whose information he has made the last introduction. It is obvious that, when an officer taking an acknowledgment and making a certificate assumes any such fact, he does it at his own risk. The law warns him, when he has not "personal knowledge" of his own, to resort to certain observances which the law supposes to be sufficient in practice to prevent imposition. The very lowest of these observances is proof by two witnesses who possess such personal knowledge of the identity of the cognizor with the grantor; for the statute says, cautiously, "at least two credible witnesses." Hence we see that, in a case of any doubt, it is not only permissible, but imperative, that the number of witnesses should be increased; that, not only their number, but their credit, must be looked to by the officer; that, as their testimony is to be taken, they must be sworn; and that, to secure them for future reference, their names and places of residence must be stated in the certificate. An officer taking all

these precautions may, of course, be still deceived, and so be led to make a certificate that is calculated to mislead. But such a certificate is infinitely less likely to deceive or mislead .than a declaration that the party making the acknowledgment is well known to the officer making the certificate. It puts all persons upon inquiry, and furnishes .a clue for conducting it ; *and it complies with the law.*

If, after all, the party making the ·acknowledgment proves to be an imposter, the officer would, we think, if acting in good faith, stand excused. But we are. of the opinion that the non-compliance with the formalities ·enjoined by the statute, and the assumption of any fact which afterwards proves to ·be no fact at all, will subject the officer to all the risks attendant on the negligent performances of official duty. It may be very courteous to waive all such formalities ; it may be disagreeable to speak plainly and tell a party that one is not willing to assume that he is not falsely personating another ; but no one is at liberty to practice courtesy or gain popularity, to indulge his own indolence, or avoid unpleasant things at the expense ·of others. If these others sustain loss by his laxity, it is impossible to listen to assurances from him that he meant well and really did not know better, where it was his plain ·duty to probe the matter to the bottom, and not to certify .at all until he knew what he was talking about. It· is perfectly idle for him to protest that he did not know or suspect that his certificate was false. *That* may be granted ; but it is nothing to the purpose. His business was *to know* .that it was true.

It would be strange if a notary were exempted from the usual—we may say, the universal—consequences of negligence in the performance of duty, occasioning loss to others. If no precedent existed of the exaction of the penalty of such negligence in the case of a notary, we should have no diffi- culty in applying to them a rule from which no reason for exemption is shown. But the case is not " *res integra.*"

The instances in which the negligence of a notary renders
him liable to the party injured by it are collected in the
notes to section 427 of Shearman and Redfield on Negli-
gence, and in notes to section 168 of the same work. There
can be no doubt of the liability of the notary under such
circumstances. Not one of the instructions asked by the
defendant should have been given.

The first in the order in which they appear in this opinion
is in the nature of a demurrer to the evidence. When this
was asked does not appear. It may possibly have been at
the close of the plaintiff's case; but this view is not sus-
tained by the record. If it were asked at the close of the
evidence on both sides, it invited the jury to confine itself
to that which was adduced by the plaintiff, when possibly
the case made by it was strengthened by the testimony for
the defense, or, at any rate, a link supplied for want of
which the case of the plaintiff might be incoherent. We
do not think that such was the case here, or that this
instruction could have been properly given at any stage.

The third could hardly fail to mislead the jury. It is
difficult to say what was in the mind of the counsel drafting
it. If it meant that, if the owner of the money or his agent
directed Meyer to lend the money secured by the deed of
trust to the person who signed it, then the defendants are
not liable—it was objectionable as not being warranted
by the evidence. There is no evidence that the task of
ascertaining the identity of the party was assumed by
Kleinsorge or his agent. If it meant that the owner or his
agent simply directed Meyer to perform a ministerial act,
then, again, the evidence does not warrant it.

The second instruction substitutes credulity for vigilance,
and opens the door to an inquiry which is wholly unreason-
able. It also refers to the jury to determine in the recesses
of their own consciousness what would be "a reasonable
cause to believe" something which the statute requires an
officer either *to know personally*, or to take evidence

respecting it in a prescribed form, and to preserve that evidence and the name of the witnesses in a particular mode. The officer does not know the fact personally, takes no pains to satisfy himself of it as required by law, but indolently and credulously (this is the most favorable conclusion) assumes it to be true without inquiry. It turns out to be false ; and words would be wasted in demonstrating the impropriety of listening to such an excuse as is suggested by this instruction.

The fourth instruction is merely a repetition of the second, or it is for a double reason improper. It tells the jury that if Meyer, when he made the certificate, honestly believed that he knew the matters certified, and that said facts were true, then, etc. Does this signify that, if Meyer believes the facts certified to be true, the plaintiff could not recover ; or that, if the matters *were* true, he could not? The first hypothesis has been already disposed of; as to the second, we can only say that, as the matters certified were demonstrably false, it would have been highly improper to suggest to the jury the possibility of a verdict directly against the evidence. The ambiguity of the instruction suffices to condemn it, however.

The fifth instruction and the sixth are sufficiently discussed already.

The only serious difficulty we have had in this case arises out of the structure of the petition. It is not alleged in it that Meyer was bound by any obligation of official duty to take the acknowledgment of the deed, and to ascertain and certify the personality of the cognizor, nor that any consideration passed from any one to Meyer for the performance of this task. As there was no demurrer, and no motion in arrest, we are of the opinion that the defendant cannot take advantage of any defect in this particular, and that we are not at liberty to determine a point not presented to the court.

It is not easy to say whether the judgment is against the

Kleinschmidts alone, or whether Meyer, who was not served, appeared to the action. The answer is ambiguous. This point, also, is not before us for review.

3. The court refused instructions asked by plaintiff, and gave in its own language a declaration of law, which has been obviously mutilated in the copy. The word "but," in the second line of the forty-second page of the record, must evidently be read "not," and the word "correction," in the third line, should be read "correctness," in order that the language should convey an intelligible idea. As the context enables us to make this reading, and as the general sense of the instructions is clear, we will not reverse for this cause. Judge BAKEWELL, having been of counsel, does not sit. Judge LEWIS concurring, the judgment is affirmed.