### BRITTAIN et al. v. MONSUR et al.
#### (No. 196.)

(Court of Civil Appeals of Texas. Beaumont. May 17, 1917. Rehearing Denied June 6, 1917.)

1. ACKNOWLEDGMENT ⬡⟿48 — TAKING ACKNOWLEDGMENT—IDENTITY—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 6801, providing that no acknowledgment of any instrument of writing shall be taken unless the officer knows or has satisfactory evidence on the oath or affirmation of a credible witness, which shall be noted in his certificate, that the person making the acknowledgment is the individual who executed and is described in the instrument, where a notary public has not personal knowledge of the identity of the party who makes an acknowledgment before him, he takes such acknowledgment at his own risk, unless he complies with the statute as to proof of identity by the oath or affirmation of a credible witness, a notary being a guarantor or insurer for the benefit of vendees by his certificate to an acknowledged deed.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 241–243.]

2. ACKNOWLEDGMENT ⬡⟿48—FALSE CERTIFICATE OF ACKNOWLEDGMENT — ACTION FOR DAMAGES—TITLE—BURDEN OF PROOF.

In an action by the buyer of land against a notary on the ground that he relied on a false certificate of acknowledgment of the notary to a deed to his grantor, and thereby failed to get title which he would have gotten if the certificate had been true, title to the land involved was a mere incident, and, not being disputed by defendant notary, plaintiff did not need to show that if the certificate had been true he would have acquired a good title to the land because the party purporting to have acknowledged was the owner.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 241–243.]

3. ACKNOWLEDGMENT ⬡⟿48—LIABILITY FOR MISTAKE IN CERTIFYING.

A notary's liability to a buyer of land for mistake in certifying to the identity of a person acknowledging a deed is greater than that of an indemnitor, and recovery can be had against the notary without showing reason for not suing the party who impersonated another in making acknowledgment.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 241–243.]

4. NOTARIES ⬡⟿11—LIABILITY FOR MISTAKE IN CERTIFYING—IDENTITY—PLAINTIFF.

In an action by the buyer of land against a notary public and the sureties on her bond for damages resulting from a false certificate of acknowledgment to a deed made by the notary and relied upon by the buyer, the court properly rendered judgment against defendants, though plaintiff buyer was not a party to the deed ac-

knowledged before the notary and alleged to have been forged.

[Ed. Note.—For other cases, see Notaries, Cent. Dig. §§ 28–36.]

5. EVIDENCE ⬡⟿159 — LIABILITY FOR FALSE ACKNOWLEDGMENT—DEED.

In suit against a notary and her sureties by the buyer of land for damages accruing to the buyer from the notary's having taken a certificate of acknowledgment to a deed without knowledge of the identity of the party who acknowledged, where there was no dispute that the purported owner of the land executed and delivered a deed from himself to plaintiff, for which he received $500, it was unnecessary to offer in evidence the deed itself to prove its existence, it being permissible to show its execution by parol testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 471, 474.]

6. APPEAL AND ERROR ⬡⟿1011(1)—REVIEW—FINDING ON CONFLICTING EVIDENCE.

A finding of the trial court on conflicting evidence is binding on the Court of Civil Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3988.]

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Suit by Jacob Monsur and others against Rita L. Brittain and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Lipscomb, Gordon & Lipscomb and J. F. Lanier, all of Beaumont, for appellants. J. W. Mackey and C. W. Howth, both of Beaumont, for appellees.

BROOKE, J. This was a suit brought in the name of the state of Texas by Jacob Monsur against appellants Rita L. Brittain, as a notary public, and I. Block and Thomas Brown, as sureties on her bond as a notary, to recover the sum of $1,000, alleged damages claimed by the plaintiff to have resulted from a certificate made by the said Rita L. Brittain, as a notary public, and relied upon by the plaintiffs as being true, whereas, they allege that it was not in fact true. The plaintiff Monsur was given a judgment for the sum of $500 against the defendants, appellants here, with interest thereon at the rate of 6 per cent. per annum from September 30, 1915. The defendants in said judgment, appellants herein, in due time filed and urged their motion for a rehearing, and to reverse the said judgment in the trial court, and said motion being overruled, they gave notice of appeal, and the appeal, having been perfected according to law, is now before this court in due course.

It is urged upon this court that this case is one of great importance, beyond the amount involved, for the reason that it presents, perhaps, new matters for adjudication.

At the outset, we are confronted with a proposition that appellants' first assignment of error should not be considered, for the reason that the same is too general, and for the further reason that the brief is not pre-

---

⬡⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pared in accordance with rules 30 and 31 (142 S. W. xiii), in that the propositions do not follow the assignments; that the four propositions under appellants' first assignment of error should not be considered, because the assignment itself is too general, and the propositions do not follow the assignment, with an appropriate statement under each proposition; that the statement under the first assignment should not be considered, because it follows the assignment, instead of the proposition, and is mixed with argument, deductions, and conclusions, in violation of the rules. We must confess that appellants' brief is, perhaps, subject to the objections urged, but inasmuch as great stress seems to be laid upon the matters and things calling for adjudication therein, we are rather inclined to be lenient, and to consider the matters set out in said brief. The case was tried before the court, and the defendants in the court below requested the court, in writing, to file his findings of fact and conclusions of law, upon which his judgment was based. The following are said findings and conclusions:

"Findings of Fact.

"The court finds from the evidence that:

"First. On the 20th day of March, 1915, the defendant Rita L. Brittain was a duly appointed, qualified, and acting notary public for Jefferson county, Tex., and that the defendants Thos. Brown and I. Block were sureties on her official bond as such notary.

"Second. That on said 20th day of March, 1915, a person representing himself to be Tom Lucid, of Cherokee county, Tex., appeared before said Rita L. Brittain, notary public, and produced and requested her to take his acknowledgment to an instrument in writing purporting to be a warranty deed in regular form from Tom Lucid to Henry V. Weber, bearing date the 20th day of March, 1915, and to which the name of Tom Lucid appeared to have been signed, whereby, in consideration of 'one dollar, love and affection,' said Lucid conveyed to said Weber lot No. 6 in block No. 45 of the Van Wormer addition to the city of Beaumont, Jefferson county, Tex.

"Third. That the said Rita L. Brittain, notary public, took the acknowledgment of the said person so representing himself to be Tom Lucid, the grantor named in said deed, and indorsed thereon her certificate of acknowledgment in due form and authenticated the same by her signature as notary and the impression of a notarial seal thereon. That the said certificate so appended to said deed was in the following language:

"'The State of Texas, County of Jefferson. Before me, Rita L. Brittain; notary public in and for Jefferson county, Texas, on this day personally appeared Tom Lucid, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed. Given under my hand and seal of office this 20th day of March, A. D. 1915. [Signed] Rita L. Brittain, Notary Public, Jefferson County, Texas. [Seal of Notary Public.]'

"Fourth. That the said Rita L. Brittain did not know the said person so appearing before her to be Tom Lucid, the person named and described in said deed as the grantor, and did not have satisfactory evidence upon the oath or affirmation of a credible witness, and noted in said certificate, that he was the person he represented himself to be, and the individual who executed and was described in said instrument as required by article 6801 of the Revised Statutes of Texas.

"Fifth. That the means taken by the said defendant notary to satisfy herself as to the identity of said acknowledgor were: That about two weeks prior to the date in question, the same person had appeared before her and acknowledged the execution of a similar deed under the name of Tom Lucid, of Cherokee county, Tex., conveying different property, but to the same grantee; and on that occasion the said notary, who had formerly herself resided in Cherokee county, and was acquainted there, in order to test the said person and to satisfy herself that he was the said person he represented himself to be, to wit, Tom Lucid, asked him various questions concerning people and conditions in that county, and his answers being satisfactory, and the further fact that he himself told her that he was Tom Lucid, and had on the same day dictated certain letters to be transcribed by her as public stenographer, and that to the best of her belief he had signed the letters in the name of Tom Lucid, also from the further fact that during the interval of two weeks between the two acknowledgments she frequently saw him about the hotel in which her office was situated, that from all these circumstances she concluded and was satisfied that he was in fact Tom Lucid of Cherokee county, Tex., and the person he represented himself to be, and, being so satisfied, she made no other efforts to fix his identity.

"Sixth. That Henry V. Weber, the grantee named in the said purported deed, thereafter, on the 3d day of April, 1915, through his agent, one Sheffield, offered to sell and convey said lot No. 6 in block No. 45 of the Van Wormer addition to the city of Beaumont to the plaintiff Monsur for the sum of $600. That the said Monsur, after said lot had been shown to him by said Sheffield, offered to buy the same and to pay therefor the sum of $500, upon condition that his (plaintiff's) attorney would advise him after an examination of the abstract that said Weber had good record title thereto, which offer was accepted. That said Weber delivered abstract of title to plaintiff's attorney, Jno. W. Mackey, who, after having examined the same, advised plaintiff Monsur that the title to said property was in Tom Lucid, no deed appearing of record or in the abstract from said Lucid to Henry V. Weber. That plaintiff so advised the said Weber, who then exhibited to said Monsur and his attorney the said purported deed of conveyance from said Tom Lucid to Henry V. Weber, dated March 20, 1915, acknowledged in due form before Rita L. Brittain, notary public of Jefferson county, Tex., and duly certified to by such notary under her signature and the impress of notarial seal. That said deed of conveyance had not at said time been placed of record, and did not appear in the abstract of title. That plaintiff Monsur, relying upon the genuineness of said deed, and particularly upon the truth of the statements contained in the certificate of said notary appended thereto, believed that said Weber had acquired good title to said property, thereupon purchased the same, paying to the said Henry V. Weber therefor the sum of $500 in cash, receiving deed of conveyance from said Weber for same, which deed was promptly placed of record, together with said purported deed of conveyance from Lucid to Weber.

"Seventh. That within a short time thereafter, the said Tom Lucid, claiming to be the owner of said lot, and that the purported deed from himself to Henry V. Weber was a forgery, filed suit in the Fifty-Eighth district court of Jefferson county, Tex., against the plaintiff Monsur for title and possession thereof. That on the 30th day of September, 1915, upon a trial of said cause, said Tom Lucid recovered a judg-

ment against the said Monsur for title and possession of said property, and ousting said Monsur from the title and possession thereof, whereby he lost the same, together with the $500, which he had paid as the consideration therefor.

"Eighth. I find that no part of the said sum of $500 paid by said Monsur as a consideration for said land has ever been repaid to or recovered by him.

"Ninth. I find that the lot of land referred to, with the improvements thereon, was of the reasonable value of from $500 to $700.

"Tenth. I find that the question of the ownership of and title to said lot 6 in block 45 of the Van Wormer addition to the city of Beaumont was not made an issue in the trial of this cause, the only evidence submitted upon that question being the testimony of the witness Tom Lucid to the effect that he was the owner thereof, and the further evidence of the judgment rendered in the Fifty-Eighth district court of Jefferson county, awarding the title thereto to the said Tom Lucid, which title was not denied upon this trial; the said question of title being a mere incident, and not an issue herein.

"Eleventh. The evidence as to amount and value of improvements made on said property by plaintiff Monsur, being uncertain and conflicting, is deemed to be insufficient to justify a finding by the court as to said improvements.

"Twelfth. I find that the reliance of Monsur upon the recitals of said purported deed of conveyance from Tom Lucid to Henry V. Weber, and upon the truth of the statements contained in the certificate of acknowledgment and authentication by said notary Rita L. Brittain, appended thereto, was the sole inducement moving said Monsur to the purchase of said land, and parting with said sum of $500 as the consideration therefor.

"Thirteenth. I find that the said purported deed of conveyance from Tom Lucid to Henry V. Weber, and the certificate of acknowledgment by the notary appended thereto, when exhibited to plaintiff Monsur, appeared to be in regular form, and that there was nothing connected therewith which would be calculated to put an ordinarily prudent person upon notice of any irregularity therein, or to excite his suspicions as to the genuineness thereof, and that it was not negligence on the part of said Monsur in relying thereon and in purchasing the said property.

"Fourteenth. I find that the recitals contained in the certificate of defendant Rita L. Brittain, notary public, appended to said deed, to the effect that Tom Lucid, the grantor named therein, had appeared before her, that he was personally known to her, and that he had acknowledged to her the execution of said instrument, were not true.

"Fifteenth. I find that the said Tom Lucid did not sign his name to said purported deed, and that he did not personally appear before Rita L. Brittain, a notary public, and acknowledge to her that he executed the same.

"Sixteenth. I find that a person other than Tom Lucid, to wit, Henry V. Weber, affixed the name of Tom Lucid to said purported deed of conveyance, and appeared before defendant Rita L. Brittain, notary public, impersonated and represented himself to be the said Tom Lucid, the grantor named and described in said instrument, and acknowledged the execution thereof. I further find in this connection that the notary believed the party appearing before her to be Tom Lucid.

"Seventeenth. I find that the person appearing before her was not known by the said Rita L. Brittain, notary public, and that said defendant notary took the acknowledgment of said person and made certificate thereof without having satisfactory evidence on the oath or affirmation of a credible witness, noted in such certificate; that the person making such acknowledgment was the individual who executed and was described in said instrument.

195 S.W.—58

"Eighteenth. I find that the taking of the acknowledgment of said person to said instrument by the defendant notary, without first having satisfactory evidence on the oath or affirmation of a credible witness, and noting same in her certificate, that the person making such acknowledgment was the individual who executed and was described in said instrument constituted negligence, and a failure to faithfully perform the duties of her office.

## "Conclusions of Law.

"From the foregoing facts, the court concludes as a matter of law:

"First. That the means employed by the defendant Rita L. Brittain, as a notary public, before taking the acknowledgment to said deed, in satisfying herself as to the identity of the acknowledgor, even though she may have acted in good faith, believing the person appearing before her to be the identical person he represented himself to be, were not a sufficient compliance with the requirements of article 6801 of the Revised Statutes of Texas.

"Second. That said defendant notary was guilty of negligence, and a failure to faithfully and properly perform the duties of a notary public, in that she took the acknowledgment of said person without knowing or having satisfactory evidence on the oath or affirmation of a credible witness, and noting same in her certificate, that the person making such acknowledgment was the individual who executed and who was described in said instrument.

"Third. That by reason of such negligence, and as the direct and proximate result thereof, the plaintiff Monsur has been damaged in the sum of $500, the amount paid by him as the consideration for said land, and is entitled to judgment against the said Rita L. Brittain as principal, and against Thos. Brown and I. Block, as sureties on her official bond, in said sum, together with interest thereon at 6 per cent. per annum from the 30th day of September, 1916.

"Fourth. That the plaintiff is not entitled to any judgment for any improvements made by him on said property, to which findings and conclusions and each of them the defendants in open court except."

The first assignment of error is as follows:

"The court erred in overruling the general exceptions of the defendants to plaintiffs' petition."

This is followed by the proposition:

"Under the Texas statutes it cannot be held that a notary public is a guarantor or insurer, for the benefit of a remote subsequent vendee in the chain of title; that his certificate of the identity of the grantor named in the acknowledged deed with the person appearing before him to acknowledge it is true."

On the contrary, it is contended:

"Under the Texas statute it is the absolute duty of the notary to personally know the person whose acknowledgment he takes, or in the absence of such personal knowledge to have proven to him by satisfactory evidence on the oath of a credible witness which shall be noted in the certificate, that the person appearing before him making such acknowledgment is the person described in the instrument."

Article 6797, Vernon's Sayles' Tex. Civ. Statutes 1914, provides:

"The acknowledgment or proof of an instrument of writing for record may be made within this state before either:

"1. A clerk of the district court.

"2. A judge or clerk of the county court.

"3. A notary public."

Article 6798, Id., provides:

"The acknowledgment or proof of an instrument of writing for record may be made with-

out this state, but within the United States or their territories, before either:

"1. A clerk of some court of record having a seal.

"2. A commissioner of deeds duly appointed under the laws of this state.

"3. A notary public."

Article 6800, Id., provides:

"The acknowledgment of an instrument of writing for the purpose of being recorded shall be by the grantor or person who executed the same appearing before some officer authorized to take such acknowledgment, and stating that he had executed the same for the consideration and purposes therein stated; and the officer taking such acknowledgment shall make a certificate thereof, sign and seal the same with his seal of office."

Article 6801, Id., provides:

"No acknowledgment of any instrument of writing shall be taken, unless the officer taking it knows or·has satisfactory evidence on the oath or affirmation of a credible witness, which shall be noted in his certificate, that the person making such acknowledgment is the individual who executed and is described in the instrument."

Article 6803, Id., provides:

"Any officer taking the acknowledgment of a deed, or other instrument of writing, must place thereon his official certificate, signed by him and given under his seal of office, substantially in form as hereinafter prescribed."

Article 6804 prescribes the form of certificate of acknowledgment. Article 6806 provides for the proof of an instrument by witness, and article 6807 is as follows:

"The proof by a subscribing witness must be by some one personally known to the officer taking the proof to be the person whose name is subscribed to the instrument as a witness, or must be proved to be such by the oath of a credible witness, which fact shall be noted in the certificate."

Article 6002, Id., provides:

"There shall be appointed by the Governor, by and with the advice and consent of the Senate, a convenient number of notaries public for each organized county, and not to exceed six notaries public for each unorganized county in this state, who shall hold their office for the term of two years from the first day of June after appointment at a regular session of the Legislature: Provided, that the Governor by and with the advice and consent of the Senate may appoint additional notaries public at any special session of the Legislature, who shall hold their office until the first day of June succeeding the next regular session of the Legislature after their appointment: Provided that nothing herein be so construed as to exempt them from jury service."

Article 6003, Id., provides:

"Every person who may be appointed a notary public, before he enters on the duties of his office, shall execute a bond, with two or more good and sufficient sureties, to be approved by the clerk of the county court of his county, payable to the Governor and his successors in office, in the sum of one thousand dollars, conditioned for the faithful performance of the duties of his office; and shall also take and subscribe the oath of office prescribed by the Constitution, which shall be indorsed on said bond, with the certificate of the officer administering the same; said bond·shall be recorded in the office of the clerk of the county court, and deposited in said office, and shall not be void on the first recovery, and may be sued on in the name of any party injured from time to time until the whole amount thereof has been recovered."

Article 6011, Id., provides:

"Every notary public shall procure and keep a well-bound book, in which shall be entered the date of all instruments acknowledged before him, the date of such acknowledgments, the name of the grantor or maker, the place of his residence or alleged residence, whether personally known or introduced, and, if introduced, the name and residence or alleged residence of the party introducing him; if the instrument be proved by a witness, the residence of such witness, whether such witness is personally known to him or introduced; if introduced, the name and residence of the party introducing him; the name and residence of the grantee; if land is conveyed or charged by such instrument, the name of the original grantee thereof shall be kept, and the county where the land is situated. The book herein required to be kept, and the statements herein required to be entered, shall be an original public record, and the same shall be open to inspection by any citizen at all reasonable times; and such notary public shall give a certified copy of any record in his office to any person applying therefor on payment of all fees thereon."

Above have been given the statutory provisions with reference to notaries public applicable to this case.

In the case of Joost v. Craig, 131 Cal. 504, 63 Pac. 840, 82 Am. St. Rep. 374, which was a very similar case to the one under advisement, the following language is used in its decision:

"This is an action against a notary public and his sureties for damages charged to have resulted from the negligence of the notary. As appears from the record, in April, 1891, one Fisher, who was a real estate broker in San Francisco, as such broker offered to sell to plaintiff ten lots of land situate in San Mateo county, then standing in the name of Charles A. Anderson. The lots were part of the Abbey Homestead Association's lands. Plaintiff was familiar with these lands and had bought a portion of them. He contracted with Fisher at once for the property, agreeing to pay $1,000 for it, conditioned, as usual, upon the title. He had an abstract made, and, finding that the title of Anderson was good, informed the broker that he would pay whenever he received a deed from Anderson properly executed. A deed was produced, apparently executed by Charles A. Anderson, and acknowledged before the defendant notary, and certified by him as follows: 'On this 27th day of April, in the year of our Lord one thousand eight hundred and ninety-one, before me, Lee D. Craig, a notary public in and for said city and county, duly commissioned and sworn, personally appeared Charles A. Anderson, known to me to be the person described in, whose name is subscribed to, who executed the within and annexed instrument, and he duly acknowledged to me that he executed the same,' etc. In the body of the deed the grantor is described as 'Charles A. Anderson, of Redwood City, county of San Mateo, state of California.' It turned out that the deed was a forgery, and was not executed or acknowledged by Charles A. Anderson, of Redwood City, or by any person known by that name, but the name of Charles A. Anderson was written by one Frank C. Koen. Plaintiff accepted the deed and paid his money, relying solely upon the certificate of the notary. The lots were of the market value of $1,000. The plaintiff, through his reliance upon the certificate, paid the said sum of $1,000, which was thereby lost.

"It is provided in section 801 of the Political Code that: 'For the official misconduct or neglect of a notary public, he and the sureties on his official bond are liable to the parties injured thereby for all the damages sustained.' This statute sets at rest one of the contentions of

respondent that in taking an acknowledgment a notary acts judicially, and is therefore not liable in damages for mere negligence. At the trial the court, on motion of defendants, granted a nonsuit on the ground: 'That it appears from the evidence that plaintiff was guilty of such negligence as to put it beyond his power to recover anything from defendants.' This ground implies that in other respects the case for plaintiff was made out. There could not be contributory negligence unless there was first negligence to which it contributed. There was no evidence which tended to show negligence on the part of the plaintiff, except that when the deed, apparently executed by Anderson, acknowledged before the defendant notary, and certified as above set out, was delivered to him by Fisher, he paid over the money to Fisher without further inquiry as to the identity of the grantor. This was not negligence on the part of plaintiff. He had a right to rely upon the certificate of the notary and to presume without question that such officer had done his duty. No circumstance was brought to his attention which could raise a suspicion to the contrary. There was nothing which could have put the most prudent man upon inquiry. And the notary cannot excuse his negligence, under such circumstances, by the claim that the party who has been injured has trusted to his faithful performance of duty. The whole theory that the record of such instruments gives constructive notice of the contents of recorded instruments is founded upon the proposition that upon proper investigation the genuineness of such instruments has been determined. The certificate is also received as evidence in a trial in a court of law that the deed is genuine. If the deed is not genuine, but is forged, the notary and his sureties ought to be held for all damages unless they have taken the precautions expressly required by the statute. The Legislature has taken great care, though, considering the importance of the matter, not too great, to make this certificate reliable. Section 1185 of the Civil Code provides as follows: 'The acknowledgment of an instrument must not be taken unless the officer taking it knows or has satisfactory evidence, on the oath or affirmation of a credible witness, that the person making such acknowledgment is the individual who is described in and who executed the instrument; or, if executed by a corporation, that the person making such acknowledgment is the president or secretary of such corporation.' The notary is expressly forbidden to take the acknowledgment unless he knows that the person making the acknowledgment is the person described in the instrument. Here such person was described as Charles A. Anderson, of Redwood City. If he did not know this it should have been proven by the oath of a credible witness, whose name must be stated. Civ. Code, § 1189. It is not enough that the person be introduced to the notary by a responsible person. If that were enough there would be no purpose in requiring the oath, for such person could always furnish the introduction. This point has been often decided, although sufficiently obvious from the statute. To take an acknowledgment upon such introduction without the oath is negligence sufficient to render the notary liable in case the certificate turns out to be untrue.

"The matter was considered in Jones v. Bach, 48 Barb. [N. Y.] 568. It is there said: 'The object of all these well-considered provisions relative to the proof and recording of conveyances of real estate was to protect owners of property and their creditors against forgery, as well as to secure the rights of grantees and mortgagees against spurious and fraudulent conveyances. Would this object be effected by the manner in which the acknowledgment in this case was made? Any one could be falsely personated without check or liability to punishment for crime if a mere introduction at the moment shall authorize the officer to take the acknowledgment. The person who introduces, if the statement be false, only commits a falsehood; but if he is sworn as to the truth of his statement, should it be knowingly false, he is guilty of perjury, and liable to a prosecution for a felony.' The statute of New York there considered was not as clear on this proposition as ours. It did not expressly require the oath, but only 'satisfactory evidence.' But even under that language it was held that a mere introduction is not enough. The certificate here gave assurance that the notary knew of his own knowledge, and not upon mere hearsay, that the grantor was Charles A. Anderson, of Redwood City. If this certificate was not true, the notary should be held. The same matter was discussed in State v. Meyer, 2 Mo. App. 413. The court makes some suggestions as to what degree of acquaintance will authorize the notary to certify that he has personal knowledge, and also upon the proposition that an introduction, even by a responsible person, could not be relied upon, and says: 'It is obvious that when an officer taking an acknowledgment and making a certificate assumes any such fact, he does it at his own risk. The law warns him when he has not "personal knowledge" of his own to resort to certain observances which the law supposes to be sufficient in practice to prevent imposition. * * * But such a certificate is infinitely less liable to deceive or mislead than a declaration that the party making the acknowledgment is well known to the officer making the certificate. It puts all persons upon inquiry, and furnishes a clue for conducting it; and it complies with the law.' This makes the certificate upon personal knowledge a guaranty of the genuineness of the instrument, and the court adds: 'It is perfectly idle for him to protest that he did not know or suspect that his certificate was false. That may be taken for granted, but it is nothing to the purpose. His business was to know that it was true.' A notary may take all due precautions and fully comply with the statute and still be deceived. In such case he would not be held liable, but if he has not fully complied with the statute, the rule announced above is not a whit too stringent. This case was followed and commented upon in State v. Balmer, 77 Mo. App. 463. It may be here remarked that the witness by whose oath the execution of an instrument is proven when the person executing the instrument was not previously known to the officer must himself be known to the notary. This is implied by the requirement that the officer shall certify that such person is a credible witness. When these necessary facts do not exist, the notary is expressly prohibited from taking the acknowledgment at all. When the notary does not obey this statute he should expect to be held liable. And I wish to repeat, these requirements are of great importance to the business world, and not at all too exacting."

Following this case in the case of State v. Meyer, 2 Mo. App. 413, the following language is used: . .

"It is the duty of a notary or other officer taking an acknowledgment of any party to an instrument in writing to exercise care to avoid a mistake as to the identity of the cognizor, and, when he is not acquainted with such party, to require satisfactory evidence of his personality before certifying to the fact that he is satisfied of it. No one has a right to be satisfied of such a fact, when the interests of third persons are involved, upon anything short of legal evidence. That is, the cognizor must be personally known to the officer, or he must be proved to be the person whose name is subscribed to the instrument by the requisite number of witnesses prescribed by the statute."

And further:

"Noncompliance with the formalities enjoined by the statute, and the assumption of any

fact 'which afterward proves to be no fact at all, will subject the officer to all the risks attendant on the negligent performances of official duty. It may be very courteous to waive all such formalities; it may be disagreeable to speak plainly and tell a party that one is not willing to assume that he is not falsely personating another; but no one is at liberty to practice courtesy or gain popularity, to indulge his own indolence, or avoid unpleasant things at the expense of others. If these others sustain loss by his laxity, it is impossible to listen to assurances from him that he meant well and really did not know better, where it was his plain duty to probe the matter to the bottom, and not to certify at all until he knew what he was talking about. It is perfectly idle for him to protest that he did not know or suspect that his certificate was false. * * * His business was to know that it was true." State v. Meyer, 2 Mo. App. 413, 421.

It is held in State v. Balmer, 77 Mo. App. 463:

"When a notary takes an acknowledgment and makes a certificate in which he assumes the identity of the person making the acknowledgment to be the same as that of the grantor, he does it at his own risk. The law warns him, when he has not "personal knowledge" of his own, to resort to certain observances which the law supposes to be sufficient in practice to prevent imposition. The very lowest of these observances is proof by two witnesses who possess such personal knowledge of the identity of the cognizor with the grantor, for the statute says, cautiously, "at least two credible witnesses." ' Hence, it is seen 'that in a case of any doubt, it is not only permissible, but imperative, that the number of witnesses should be increased; that not only their number but their credit must be looked to by the officer; that, as their testimony is to be taken, they must be sworn; and that, to secure them for future reference, their names and places of residence must be stated in the certificate.' State v. Meyer, 2 Mo. App. 413, 420. If a notary certifies that he knows a person whom he does not know, on the mere introduction of some party, and loss results therefrom, and from false personation, he and his sureties must make it good."

We believe the reasoning in the above cases holds good in the instant case. The California statute seems almost identical with the Texas statute. It seems that by the Missouri statute two witnesses are required. We are also cited to volume 1, p. 903, Corpus Juris, which lays down the degree of care and diligence required as follows:

"Where there is no statute prescribing the manner in which the officer shall ascertain the acknowledgor's identity, he is held to the care and diligence of a reasonably prudent man, but he is not an insurer of the truth of his recitals. Where, however, it is prescribed by statute that if the officer does not personally know the acknowledgor to be the person described in the instrument, his identity must be established by sworn witnesses, the officer acts at his peril in making the certificate on the strength of a mere introduction or anything short of the evidence required by the statute."

[1] The cases cited, together with the reasoning of the same, are decisive of this case, so far as this court is concerned, and the test, therefore, of the liability of appellant and her bondsmen is whether the notary followed the statute. It does not leave the measure or degree of care, for the very reason that the statute prescribes what must be done. It is a plain statutory liability, in the opinion of this court, and must be followed, and really amounts to the fact that a notary public is a guarantor or insurer, for the benefit of vendees, that his certificate of identity of the grantor named in the acknowledged deed, and that he is the same person who appeared before him to acknowledge it as being true. We have carefully examined the case of Lindley v. Lindley, 92 Tex. 446, 49 S. W. 573 and Sowers v. Peterson, 59 Tex. 218, cited by the appellant. However, believing as we do and as above set out, the assignment is in all things overruled.

By the second assignment of error, the action of the lower court is challenged in rendering judgment for the sum of $500 against appellant, "because there was no evidence to support such a judgment for alleged damages; there was no proof that the title to the land in controversy was in Tom Lucid; there was no proof that he was in possession thereof; nor of any other facts wherefrom it could be legally inferred that he was the owner or that a genuine deed from him would have had any value, and therefore there was no proof upon which any judgment for damages more than nominal could be sustained."

The proposition under this assignment is:

"Before one can recover damages from a notary on the ground that he has relied upon a false certificate of the notary and thereby failed to get a title which he would have gotten if the certificate had been true, it is certainly necessary for him to show that, if the certificate had been true, the thing he would have acquired, but for the falsity of the certificate, was of some value, and the claim acquired by purchase from the purported grantee in a deed reciting $1 consideration would be of no great value unless the purported grantor in said deed was shown or was admitted to have had title to the land."

On the contrary, it is contended that where one sues for damages caused by a false certificate of a notary to a deed conveying land, and alleges that had said certificate been true the deed to which it was annexed would have conveyed a good and valid title, the title to the land in said suit being a mere incident and not the main issue, and not being disputed by the defendant, the same burden of proof of title is not required as is required in suits of trespass to try title; that it was alleged by the appellee in this petition that the legal title to said land was in Tom Lucid; that had the certificate of the notary to the deed purporting to be from Tom Lucid to Henry Weber been true, he would have acquired a good and valid title; that appellant paid $500 to Henry Weber for a deed from him to appellant, and that in doing so he relied upon the truthfulness of the notary's false certificate; that thereafter the real Tom Lucid recovered said land from him on the ground that said deed was a forgery; that the appellants do not deny that a good and valid title to said land was vested in Tom Lucid; that they do not deny that had the recitations in the certificate of the notary been true, that appellant would, as he

alleges, have acquired a good and valid title to the said land.

The court's conclusion on this proposition is as follows:

"I find that the question of the ownership of and title to said lot 6 in block 45 of the Van Wormer addition to the city of Beaumont was not made an issue in the trial of this cause, the only evidence submitted upon that question being the testimony of the witness Tom Lucid to the effect that he was the owner thereof, and the further evidence of the judgment rendered in the Fifty-Eighth district court of Jefferson county, awarding the title thereto to the said Tom Lucid, which title was not denied upon this trial; the said question of title being a mere incident, and not an issue herein."

[2] Upon careful consideration, we are of opinion that there is no merit in the contention of appellant, and the assignment is therefore overruled.

The third, fourth, fifth, and sixth assignments of error are as follows:

(a) "The court erred in overruling the defendants' second special exception, and in giving heed to the pleading of the judgment in the case of Tom Lucid v. Jacob Monsur, because the defendants in this suit were not either of them parties to said judgment; the said judgment was res inter alios acta, and it was error to hold that these defendants could be in any way prejudiced or affected by the said judgment."

(b) "The court erred in considering the judgment recovered by Tom Lucid against Jacob Monsur as being proof of the ownership of the property by Tom Lucid, that being the only evidence of such ownership appearing in the records, same being admitted with that effect over the objection of the defendants, that it was not competent evidence to prove such fact."

(c) "The court erred in admitting over the objection of defendants the testimony of John W. Mackey to the effect that the title to the land to which the deed in question related was in Tom Lucid because said testimony was a mere legal conclusion of the witness, and such being the objection urged to it at the time."

(d) "The court erred in overruling the defendants' objection to the testimony of Tom Lucid embraced in his deposition wherein he stated that he was the owner of the land described in the deed in question, the objection being that such statement was a mere legal conclusion of the witness, and was not admissible for the purpose of showing ownership of the land."

The trial court was of opinion that there was no issue being made on the trial of this case as to the title, and that the title was a mere incident. In our opinion, the judgment of the trial court was correct, and these assignments are therefore overruled.

By the seventh assignment of error, appellants call in question the action of the court in rendering judgment for the sum of $500 against the defendants, because there was no evidence to support such judgment for alleged damages.

The proposition under this assignment is:

"A notary's liability for mistake in certifying identity is no greater than that of an indemnitor, and no recovery can be had against the notary without showing reason for not suing the impersonator."

On the contrary, it is contended that where the negligence of one, combined with the fraud of another, produced injury, the injured party may sue either or both of said persons upon the damage arising therefrom.

[3] We cannot agree with appellants' contention, and without giving undue length to this opinion simply say that there is no merit in the same, and therefore overrule the same.

By the eighth assignment of error, endeavor is made to raise the question of appellant's negligence. What we have said disposes of this assignment, and it is therefore overruled.

[4] By the ninth assignment of error, complaint is made that the court erred in rendering judgment against the defendants for the reason that the undisputed evidence showed that the plaintiff Monsur was not a party to the deed alleged to have been forged. We will not discuss this assignment, more than to say that we find no merit in the same, and it is therefore overruled.

By the tenth assignment of error it is claimed that the court erred in rendering judgment against either of the defendants, because it is manifest in the undisputed evidence that the damage and injury sustained by the plaintiff was not caused proximately by any act or omission of the defendants or either of them, but was directly and proximately caused by an actual fraud committed by H. V. Weber, without participation therein by any of these defendants. The opinion, as written above, disposes of this assignment, and it is therefore overruled.

Challenge is also made to the court's action in rendering judgment for plaintiff and against the defendants by the eleventh assignment of error, "for the reason that the deed alleged to have been executed by Weber to the plaintiff in this suit, for which plaintiff alleged he paid the consideration of $500, was never introduced in evidence, and there is no legal evidence in the record by which this court could assume that the plaintiff herein obtained a deed from Weber to the property for which plaintiff alleged he paid the sum of $500."

[5] There is no dispute that Henry V. Weber executed and delivered a deed from himself to Jacob Monsur, for which he received $500, and we do not believe that it was necessary to offer in evidence the deed itself to prove its existence, and are quite certain that it was permissible to show that the same was so executed by parol testimony.

The twelfth assignment of error is as follows:

"The court erred in rendering judgment against the defendants because the undisputed evidence shows that if any of the defendants were guilty of negligence, the plaintiff was himself in person or through his agent, Mackey, guilty of contributory negligence in this, viz.: That at the time of the purchase of said property the plaintiff was represented in the examination of the title by his agent, John W. Mackey. That at the time of the payment of the purchase money and closing of the deal the said plaintiff and his said agent knew that H. V. Weber was an adult stepson of Tom Lucid. That therefore Tom Lucid owed no obligation

arising out of relationship to the said Weber; they knew that the purported deed from Tom Lucid to Weber recited no other consideration than $1 and love and affection; they knew that the same was at the time withheld from record; they knew that $500, the amount which Monsur agreed to pay for said property, was a very inadequate consideration; that even that $500 was divided up between the said H. V. Weber and those who assisted him in the transaction, viz. E. A. White and one Sheffield, and the abstractor of titles, in such a way as to leave to the said H. V. Weber a net consideration of not more than $205, the very fees for examination of title and recording and revenue stamps being paid by the said H. V. Weber out of the said $500, and such circumstances being so manifestly badges of fraud as to require inquiry of Tom Lucid as to whether or not he had in fact made a perfectly gratuitous transfer of the property to his stepson."

The court, in its twelfth finding of fact, after finding that the reliance of Monsur was upon the recital of said purported deed of conveyance from Tom Lucid to Henry V. Weber, and that he relied upon the truth of the statement contained in the certificate of acknowledgment and authentication by said notary, that the same was the sole inducement moving to the said Monsur in the purchase of said land, and parting with the sum of $500 as a consideration therefor, further found as follows:

"I find that the said purported deed of conveyance from Tom Lucid to Henry V. Weber, and the certificate of acknowledgment by the notary appended thereto, when exhibited to plaintiff Monsur, appeared to be in regular form, and that there was nothing connected therewith. which would be calculated to put an ordinarily prudent person upon notice of any irregularity therein, or to excite his suspicions as to the genuineness thereof, and that it was not negligence on the part of said Monsur in relying thereon and in purchasing the said property."

[6] While this finding of the court was called in question, to say the least of it, the evidence was conflicting, and the finding of the court on that question is binding on this court.

With reference to the cross-assignments of error filed by the appellee, we have carefully considered the same, and the same are overruled. The principles announced here seem to have received the assent, not only of the courts of California and Missouri, but of many other states, and they are in accord with sound reason and logic, and while the precise question has not, perhaps, been passed on in this state heretofore, we believe that the reasons heretofore assigned are of sufficient force to appeal to the bench and bar of this state as being correct.

We have carefully examined the record, and have given it that consideration which, as appellant asserts, should be given a question of such importance, and of such far-reaching effect, and we believe that the interests of the appellant were carefully guarded by the trial court, that his conclusions reached were correct, and that the appellant has in all things had a fair and impartial trial of this cause. So believing, and finding

no error in the action of the lower court, we are of opinion that this cause should be in all things affirmed. It is so ordered.